### The Contested Election of Edwin R. Wheelock.

82 297|
Case 2 |
f221 ¹528

1. At an election for the office of county commissioner, the county commissioners did not furnish a correct copy of the resident taxables to the officers of election in one of the election districts, as required by sect. 3 of the Act of January 30th 1874: *Held,* that this was not ground for setting aside the entire poll.

2. At the same election, in another district, the election was not held at the place fixed by law and designated in the sheriff's proclamation, but at a place forty rods distant therefrom: *Held,* that the irregularity was immaterial under the circumstances, as its correction would not change the result of the election.

June 8th 1876. Before AGNEW, C. J., MERCUR, GORDON, PAXSON and WOODWARD, JJ. SHARSWOOD and WILLIAMS, JJ., absent.

Certiorari to the Quarter Sessions of *Warren county:* Of January Term 1876, No. 226. Certified from Eastern District.

These were proceedings begun by John F. Davis and twenty-five other qualified electors of Warren county to contest the election of Wheelock to the office of county commissioner.

The petition set forth that the officers of an election held November 2d 1875, had returned 1904 votes as cast for Wheelock, and 1854 votes for Darius Mead, and that the election was illegal, (1) because "in the election district of Pine Grove the election was not held at the house of John Russell, the place fixed by law and designated in the sheriff's proclamation, but was in fact held at a place forty rods distant therefrom, to wit, at the school-house in the village of Russellsburg;" (2) because "at the said election held in the district of Freehold, there was no copy of the corrected

[Contested Election of E. R. Wheelock.]

assessment as furnished by the assessor of said district to the commissioners of said county, containing the names of all persons returned by the said assessor as resident taxables in said election district, present at said election; nor was there any registry of voters present at the same, whereby the names of the resident taxables and voters of said district could be ascertained."

The petitioners further averred: "That, for the reasons specified in this petition, the votes in the said election districts of Pine Grove and Freehold ought to be rejected and not counted, which would give to the said Darius Mead 1724 votes and the said E. R. Wheelock 1609 votes for the office of county commissioner."

The court below (Wetmore, P. J.) thereupon granted a rule upon Wheelock to answer the petition. Before the hearing of this rule, counsel for Wheelock moved to quash the petition, (1) because the facts set forth in it were insufficient in law to justify the setting aside of the entire poll, or in any way to change the result as returned by the election board, there being no allegation that any person voted at said election who was not duly registered as required by law or that any person was illegally prevented from voting, or that there was any fraud or mistake in the manner of holding the election; (2) because the alleged illegality in the district of Pine Grove was not sufficient of itself to change the result of the election. The court granted a rule to show cause why the petition should not be quashed and afterwards made this rule absolute.

The following opinion was delivered:—

"The question presented by the petition is, whether the fact that no copy or list of the resident taxables and voters was present at the election board on the day of election makes the election void, and requires us to set aside the entire poll.

"The first and second sections of the Act of 30th of January 1874, directs the mode of completing the list of taxables, and describes the duties of the assessors and county commissioners in connection therewith. The third section of the same act requires the county commissioners to make a full and correct copy of the resident taxables in each election district, and to furnish the same, together with the necessary election blanks, to the officers of the election in such election district, on or before seven o'clock of the morning of the election.        *        *        *        *

"It is a general rule that, when a person is required to do an act, the not doing of which would make him guilty of criminal neglect of duty, it shall be intended that he has duly performed it: Broom's Legal Maxims 913. We therefore presume, in the absence of evidence to the contrary, that the election was duly held at the time and place fixed by law, and by the proper officers, who were duly qualified, and that the persons voting were legal voters in the election district.

[Contested Election of E. R. Wheelock.]

" An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings. When, however, it is alleged that there is actual fraud in the election, or that the ballot-box has been tampered with, or illegal votes received, or the careless or fraudulent acts of the officers have mixed and confused the ballots, the duty of the court is equally plain, and every legal facility should be afforded to purge the poll ; and when the acts of the officers are so fraudulent and irregular that the *result cannot be ascertained,* then the entire poll is rejected. These are substantially the conclusions of the judges in the contested election cases in Philadelphia in 1845, 1850 and 1858, reported in 2 Pars. and 1 and 2 Brewst.

" The State Constitution, art. 8, sect. 1, gives to every citizen possessing the qualifications prescribed, the right to vote, and section 7 of the same article provides that no elector shall be deprived of the privilege of voting by reason of his name not being registered. To disfranchise all the voters of a township, as we are asked to do in this petition, the facts on which we are required to act should show a case free from legal doubt. If we, by our decision, should permit the carelessness or even the fraud of officers whose duty it is to furnish a list of voters at the election, to defeat the election and deprive the people of the county of the officer who was elected by a majority of their votes, we would thus make the people suffer for an act in which they did not participate, and which they did not sanction. In so doing, instead of punishing an officer for the violation of the election law, we practically punish the voters of the county by defeating their choice of a county officer as declared at the election. A decision of this kind would be fraught with danger, by inviting unscrupulous or unprincipled persons, on the eve of an important election, to secrete or destroy the list of voters or other important papers in a township in which the majority may determine the result in the county. Rules applicable to contested elections, like other legal rules, must be uniform, and the results and consequences of decisions therefore determine their correctness.

" But few cases of contested elections have received a construction in our Supreme Court. In Melvin's Case, 18 P. F. Smith 333, THOMPSON, C. J., referring to the powers and duties of the court to strike out the vote of an election district, says : " This ought not to be done when a legal election as to *time* and *place* is held, although fraudulent votes have been received. The remedy in such case is to purge the polls by striking out the fraudulent votes if possible. In 1 Brewst. 176, it appeared from the evidence, that in

[Contested Election of E. R. Wheelock.]

one case the minority inspector was overawed, and the list of assessed voters taken from him, and the requirements of the law in receiving the ballots were to a great extent disregarded. There was nothing to show that the voters not on the list were qualified according to law, and a large number of such votes were received. Still the entire poll was not rejected, and each contestant was allowed to prove his legal vote, to be counted for and credited to him, in the final computation.

" The irregularity in the election district of Pine Grove is not deemed material in our conclusions, as its correction would not change the result.

" The rule to show cause why the petition should not be quashed is made absolute."

The petitioners sued out this writ of certiorari, and assigned for error the quashing of their petition.

*R. Brown* and *C. Dinsmore*, for the contestants.—The Act of 30th January 1874 provides for a register of voters, and that " no man shall be permitted to vote * * * whose name is not on said list, unless," &c. This is imperative and not merely directory: 1 Brewst. 173 ; Mann *v.* Cassidy, Id. 61 ; 2 Id. 29, 25. The officers in the Freehold district entirely disregarded this provision. In Melvin's Case, 18 P. F. Smith 333, it was held that a whole election district may be stricken out on showing an entire disregard of conformity to law in holding it either by design or ignorance. It is begging the question to presume that the commissioners or the officers of election did their duty ; their failure to do it is the gist of this complaint. The question as to Pine Grove district is ruled by Melvin's Case, *supra.*

*Johnson & Lindsey* and *Clark & Noyes*, for Wheelock.— Unless a petition sets forth such facts as would change the result, the court will not entertain it : Carpenter's Case, 2 Pars. 540 ; Skerrett's Case, Id. 518. It must state specifically sufficient facts : Skerrett's Case, *supra.* The alleged irregularities in Pine Grove are not in themselves enough to change the result. The only irregularity alleged in Freehold is that the register was not present at the election, and that the proof was not required of voters as if they were non-registered voters. In the absence of any allegation, it must be presumed that the officers did their duty : Carpenter's Case, *supra ;* there being no allegation of fraud, it must be presumed that everything necessary was done in this case, and that the absence of the registry was due to accident or honest mistake. Can all the voters be disfranchised in this way ? They could not have voted upon affidavit, for that only applies to non-registered voters ; nor in that view would there have been any qualified voter to have vouched for the first

[Contested Election of E. R. Wheelock.]

non-registered voter. "An entire poll will only be rejected when, by fraud or gross negligence, it is impossible to reach certainty:" Melvin's Case, *supra;* Cont. Elect. of 1868, 2 Brewst. 37, *supra;* Boileau's Case, 2 Pars. 505; Skerrett's Case, Id. 514. The duty of having the registry present at the election is directory: Weaver *v.* Given, 1 Brewst. 145; Penn. District, 2 Pars. 533. If the voters were registered no other proof of their right to vote was required: Marks *v.* Parke, Quarter Sessions of Venango county, MS. opinion of Trunkey, P. J.

The judgment of the Supreme Court was entered, October 10th 1876,

PER CURIAM.—We discover no error in this case. The grounds sustaining the election of Edwin R. Wheelock are sufficiently stated in the opinion of the court below.

Proceedings affirmed.