## Jones Election Contest Case.

Argued January 6, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*William J. Cudding,* for appellant.

*John P. McCord,* with him *H. Franklin Kehler* and *Watkins & Walesky,* for appellees.

OPINION BY MR. JUSTICE JONES, March 22, 1954:

This appeal is from a final order entered by the Court of Common Pleas of Schuylkill County in a controversy over the County Election Board's computation and canvass of the votes cast at the municipal election on November 3, 1953, for the office of supervisor of East Union Township, for which office William Calovine and Arthur Jones were the contesting nominees. The material facts are not in dispute and, as summarized by the hearing judge, were stipulated of record by counsel for all parties in interest. In order that the duly elected supervisors of the township might be able to organize for the conduct of the township's business (one of the qualified supervisors being incapacitated by illness), we entered an order on the appeal, after oral argument thereof and a study of the

458

briefs of counsel, reversing the order entered below and adjudging Jones entitled to the certificate of election, noting that an opinion would be filed later whereof this is in fulfillment.

As required by Section 1404 (a) of the Election Code of 1937, P. L. 1333, 25 PS §3154 (a), the Board of Elections of Schuylkill County on November 6th publicly commenced its canvass and computation of the returns of the votes cast in the county at the November 3rd election and completed its work on November 13th. The Board thereupon tabulated the figures for the entire county and signed, announced and attested the same as directed by Section 1404 (a). The Board also announced that November 18, 1953, was the last day for appealing to the Court of Common Pleas from the action of the Board of Elections for fraud or error in its canvass and computation. East Union Township comprises three election districts, namely, Oneida, Brandonville and Sheppton. On November 18, 1953, electors from the Brandonville and the Sheppton election districts petitioned the Court of Common Pleas of the county for a recount of the votes cast in those districts for the office of township supervisor. Such recount was ordered by the court and was made on November 23, 1953, in the presence, inter alia, of Calovine and Jones. The recount resulted in a change in the vote in the two named districts for a net gain to Jones. After corrections had accordingly been made in the returns for the Brandonville and Sheppton districts, the tabulation for the three election districts of the township, as then computed, showed Jones to be the winner over Calovine by a vote of 322 to 314. At the time of the recount of the ballots in the boxes of the Brandonville and Sheppton districts, a recount of the votes cast in the Oneida district was also made upon order of court duly entered at which re-

count Calovine and Jones were likewise present. But, that recount was expressly limited by the prayer of the petition and the court's order to a recanvass of the votes cast for the office of tax collector.

On November 27, 1953, which was nine days after the time for appealing to the Court of Common Pleas from the action of the County Board of Elections had expired, counsel for Calovine served notice on counsel for Jones that he would petition the County Board of Commissioners (i.e., Board of Elections) on November 30, 1953, for a recount of the votes in the Oneida election district for the office of supervisor, which he accordingly did. On the same day (i.e., November 30th) the County Commissioners, purporting to act in their capacity as the County Board of Elections, directed that a recount be made, as prayed for, by a computation board then engaged in making recounts of the votes cast for certain offices in a number of election districts *under orders of court* duly applied for and obtained. Upon the recount of the votes in the Oneida district, as ordered by the County Board of Elections on November 30th, the aggregate result for all three election districts of the township showed Calovine to have received 326 votes and Jones 314 votes. Jones promptly appealed the Board's action to the Court of Common Pleas which, after a hearing, dismissed the appeal, thus accrediting Calovine as entitled to the certificate of election. From that action of the court below Jones brought this appeal.

It was admitted of record by counsel for Calovine, and indeed it is not open to dispute, that there was no statutory authority for the course pursued by the County Board of Elections when it changed the vote in the Oneida election district for the office of township supervisor after its official duty in respect thereof had become final on November 18, 1953, without

an appeal therefrom to the Court of Common Pleas. The recount of the vote in the Oneida district for the office of township supervisor and the County Election Board's consequent revision in the return for that district were, therefore, nullities and of no legal effect. As we recently had occasion to note in *Flood Appeal,* 372 Pa. 486, 489, 94 A. 2d 565,—"Prescribed procedures in election matters are creatures of statute and, unless one can point to statutory authority for the course which he chooses to follow, his action is without legal warrant."

For justification of its belated revision of the return for the Oneida district, the County Board of Elections ostensibly relied upon the directions contained in Section 1404 (d) (1) of the Election Code (25 PS §3154 (d) (1)) which provides, with respect to a return board's canvass and computation of the votes of an election district, that "If any discrepancies are discovered, the county board shall thereupon examine all of the return sheets, tally papers and other papers in its possession relating to the same election district. If the tally papers and sealed general return sheet agree, the unsealed general return shall be forthwith corrected to conform thereto. But in every other case the county board shall forthwith cause the ballot box of the district to be opened and the vote therein to be recounted . . . ." Unfortunately for the Election Board's contention in such regard, its power to open the ballot box of the Oneida district had expired before it ordered the recount on the petition of Calovine. More than five days had elapsed since the admitted completion of the computation of the votes and no petition for a recount or a recanvass of the vote in the Oneida district for the office of township supervisor had been filed: see Section 1404 (f) of the Election Code, 25 PS §3154 (f). Nor was the statutory period of limitation on the

Board's power tolled because of its failure to open the Oneida box timely, as it should have done, when the discrepancy on the face of the returns for the district became apparent, instead of giving the tally sheet controlling effect.

Actually, at the time of the recount of the Oneida vote on the Election Board's order, the ballot box for that district was no longer in the Board's control. As already noted, the Oneida ballot box had been opened by order of court upon a petition for the recount of the vote for the office of tax collector. That recount having been completed, the contents of the box were replaced in it and it was then sealed, not to be opened until further order of the court. Such an order was never thereafter applied for nor obtained. At no time was the ballot box for the Oneida district opened for the recount of the votes cast for the office of township supervisor *upon an order of court* which, in the circumstances obtaining, was the only way such a recount could have been had at the timely instance of one aggrieved by the action of the County Board of Elections.

The learned court below was apparently motivated in the action which it took by the fact that, after the recount of the vote in the Oneida district for the office of township supervisor, as ordered by the Board of Elections, Calovine appeared to be the winner and that to award the certificate of election to his opponent would be to thwart the will of the electorate of the township. With that fact thus settled, the court relied on a patent dictum in a lower court opinion in *Contested Election of Edwin R. Wheelock*, 82 Pa. 297, 299, as authority for condoning in the instant case a procedure which was not only pursued out of time but was wholly unauthorized by the election laws, in order that effect might be given to what the court found to have been the will of the electorate. It goes without saying

that the purpose of popular elections is the due ascertainment and effectuation of the will of the electorate. But that expression must be ascertained within the rules of law statutorily prescribed for the proper attainment of the desired purpose. Any other course would lead to loose, uncertain and inconclusive election practices more likely to defeat, rather than further, the popular will. If more electors voted for Calovine than for his opponent, as belatedly appeared to have been the case, it is naturally regrettable that Calovine could not be awarded the certificate of election. But, for that the fault is largely his own. Because of his inaction, he is bound by the result as shown by the Election Board's tabulation of the votes cast for the office of supervisor in East Union Township upon its completion of its canvass and computation of the votes cast in the election from which tabulation Calovine did not, as one aggrieved thereby, appeal to the court within the period allowed by law for such purpose.

Nor can Calovine be heard to say that he was misled as to the result by the election officers or that he had no occasion to know of the discrepancy in the return of the vote in the Oneida district for the office he sought. He was present at the recount, which had been obtained timely on order of the court, of the votes in the Oneida district for the office of tax collector, but he made no application to the court, then or thereafter, for relief. Furthermore, in his petition to the County Board of Election, Calovine specifically averred that he had knowledge on November 23rd of the discrepancy in the return for the Oneida district of the vote for the office of township supervisor. There was then still time for him to have instituted an election contest (see Act of June 3, 1937, P. L. 1333, Secs. 1711, 1751 and 1756, 25 PS §§3291, 3431 and 3456) which, in the circumstances, would have required little

more proof than the opening of the Oneida box and the recount of the ballots therein which a contest court would have had authority to effect.

Neither *Koch Election Contest Case,* 351 Pa. 544, 41 A. 2d 657, nor *Field Election Contest Case,* 375 Pa. 276, 99 A. 2d 867, lends the appellee any support. In each of those cases, the court's equitable jurisdiction was invoked to restrain or prevent the commission or ensuing result of an act contrary to law which threatened injury to a complainant who was guiltless of any dereliction or culpable inactivity in respect of his rights in the subject-matter. As we have already seen, Calovine did not qualify as one entitled to such relief. Nor did he at any time seek it. The *Koch* and *Field* cases are, therefore, manifestly not in point.

The order heretofore entered is confirmed.