## Wilkes-Barre Election Contest.

508

Argued June 1, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*James Lenahan Brown,* for appellants.

*Mitchell Jenkins,* with him *Marshall H. Morgan,* and *Nelson A. Bryan,* for appellees.

Opinion by Mr. Justice Bok, July 8, 1960:

This case involves petitions to contest an election, under the Election Code, Act of June 3, 1937, P. L. 1333, Art. XVII, §§1711 and 1751; 25 PS §§3291 and 3431.

The election in question was for certain municipal offices, specifically those of city treasurer and school director in Wilkes-Barre, Luzerne County. Out of about 25,000 votes cast, candidate Goeckel emerged with a plurality of 111 votes over appellant Noonan for city treasurer, and candidate Valenti had a plurality of 53 votes over appellant Cooney for school director.

The successful candidates filed motions to quash the petitions, which alleged the illegal assistance of voters and prayed that the election of Goeckel and Valenti be set aside in favor of appellants. The court below, with President Judge Aponick dissenting, granted the motions and quashed the petitions. Noonan and Cooney, with one of the signatory petitioners, have appealed.

The petitions aver illegal assistance to 165 voters in twelve election districts of the city. Of these, five voters were alleged not to have been qualified voters in the district where they voted: these will be disregarded because they are in different case from the remaining 160, as will appear, and because they are too few to change the election even if their votes were rejected. The petitions ask us to disallow the vote in six election districts and to reject the 160 votes, either of which would tip the scales of election in favor of appellants.

The petition consists of 111 paragraphs. These fall into a pattern of allegation covering, with one exception, the twelve election districts involved. A sample follows: "100. That in accordance with a settled course of conduct, the aforesaid individual did on November

3, 1959, at the polling places in the 16th Ward—1st District of Wilkes-Barre City assist the number of voters hereinafter set forth in the casting of their vote, which assistance by him was rendered in a manner contrary to the provisions of the Election Laws providing for 'Assistance in Voting,' to wit: Rocco Grant—upwards of 5 voters.

"101. That hereinafter set forth is a list of 5 electors of Wilkes-Barre City who were voted by means of assistance contrary to the provisions of the Election Laws providing for 'Assistance in Voting'." (List follows)

The one exceptional district was covered by this allegation: "51. That voters were assisted, but no list of assisted voters was kept or returned, contrary to the provisions of the election laws."

At the end of the petition there are several general allegations, the only one of which presently germane is 102, which reads: "That all of the aforesaid illegal, false, fraudulent, and untrue votes set forth in each of the districts aforesaid accrued to the benefit of Frank A. Goeckel and were cast for Frank A. Goeckel."

It should be obvious that the petition falls far short of legal requirements. The candidates-elect were entitled to know what charges they faced, but all that the petition vouchsafes them is the general allegation that 160 voters were illegally assisted. There is no mention of how or in what particular the Election Code was violated. The petition is as vulnerable as a complaint would be if it said only that "the aforesaid contract was illegally violated" or that "the aforesaid automobile was negligently driven."

We said in *Newport Township Election Contest*, 384 Pa. 474 (1956), 121 A. 2d 141: "A complaint of an undue and illegal election or a false return must be

stated with clearness and precision and the petitioners held to due diligence to ascertain and specify the facts which, if sustained by proof, would require the court to set aside the result of the election. See also Pennsylvania Election Code of 1937, P. L. 1333, 25 PS 3456."

Section 1756 of the Code, referred to in the *Newport* case, requires: "The petition shall concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal."

Such concision does not mean merely that illegal assistance shall be alleged as a cause of the illegality of the election: the specific acts of illegal assistance must be shown. In *Election Cases*, 65 Pa. 20 (1870), Mr. Justice AGNEW described the petition to contest as follows: "It sets forth in befitting terms the general election of 1868, the persons voted for, the number of votes returned for each, and the majority for the persons returned; charges an undue election and false returns, alleges the election of the opponent, and sets forth the grounds of the illegality of the election. It charges that the officers of the election fraudulently conducted and carried on the election, with a wilful disregard of all the requirements of the law, and then specifies their various fraudulent acts by means of which the fraud was perpetrated, and illegal votes suffered to be cast for the persons named."

The petition in *Election Cases* specified that the election officers let fifty or more listed persons who were not qualified vote for a certain candidate, refused to check names on an official list, and thus failed to make a list of electors who had voted, refused to receive proof of qualifications of challenged voters, and received the unqualified votes of non-resident voters.

The petition before us does not begin to attain such specificity. Yet Section 1218 of the Code, 25

P.S. §3058, contains precise regulations covering assistance to voters.

In *Pazdrak's Contested Election,* 288 Pa. 585 (1927), 137 A. 109, the petition contained the following allegation: "(a) A large number of people in said district voted for the said Michael Pazdrak who were not qualified voters in that a large number, 50 in all, had not paid a state and county tax as required by law; a large number, 23 in all, were not naturalized citizens of the United States; a large number, 25 in all, had not lived in the election district a sufficient length of time to qualify as legal voters therein, a large number voted upon forged and fraudulent tax receipts."

Since there is no allegation in the instant petition that any voter acted illegally or that his vote was not cast according to his will, we cannot allow the carelessness or even fraud of the election officers to defeat the election and frustrate the will of the electorate. This can be done only when the illegal acts are so irregular and the election so infected with fraud that the result cannot be ascertained: *Contested Election of E. R. Wheelock,* 82 Pa. 297 (1876); *Fish's Election,* 273 Pa. 410 (1922), 117 A. 85; *Gollmar's Election Case,* 316 Pa. 560 (1934), 175 A. 510.

It is trite to say that the right to vote is basic among our liberties and is not lightly to be impaired: *Norwood Election Contest Case,* 382 Pa. 547 (1955), 116 A. 2d 552; *Bauman Election Contest Case,* 351 Pa. 451 (1945), 41 A. 2d 360.

Society's weapon against election frauds is the power to arrest those who violate the Code. Election officers allowing unlawful assistance are subject to fine and imprisonment: Section 1831 of Art. XVIII of the Election Code, 25 P.S. §3531. Any voter voting with knowledge that he does not have all the qualifica-

tions of an elector is also subject to criminal sanctions in Section 1833, 25 P.S. §3533.

In *Ayre's Contested Election,* 287 Pa. 135 (1926), 134 A. 477, we said: " 'An election is not to be held void for mere irregularities in the conduct of the election, even though the election officers may be subject to punishment for misconduct; the rights of voters are not to be prejudiced by the errors or wrongful acts of election officers': West Mahanoy Twp. Contested Election, 258 Pa. 176; see also Fish's Election, 273 Pa. 410; Krickbaum's Contested Election, 221 Pa. 521; Contested Election E. R. Wheelock, 82 Pa. 297; Melvin's Case, 68 Pa. 333." See also *Eckert's Election Case,* 308 Pa. 375 (1932), 162 A. 223; *Gollmar's Election Case,* supra (316 Pa. 560).

An election is not a private wrestling match between two opposing candidates but a demonstration of the public's electoral choice, and the rights of the public are to be kept paramount: *Wylie's Appeal,* 239 Pa. 510 (1913), 86 A. 1018; *Moock v. Conrad,* 155 Pa. 586 (1893), 26 A. 700.

The orders are affirmed.

Mr. Justice COHEN dissents.

Mr. Justice EAGEN took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

John E. Noonan was a candidate for the Office of City Treasurer in Wilkes-Barre. According to the official count of the election held on November 3, 1959, he was defeated by a margin of 111 votes by his opponent Frank A. Goekel. He filed a petition in the Court of Common Pleas of Luzerne County to contest the elec-

tion, asserting that 160 [1] voters were given illegal assistance and were therefore disqualified. He prayed that the court conduct a hearing in the matter to the end that the votes of the illegally assisted voters be invalidated and that he, Noonan, be declared elected.

The petition consisted of 111 paragraphs, describing in ample detail the nature of the fraud which nullified Goekel's election.[2] It listed the names of the illegally assisted voters, by whom they were illegally assisted, and the circumstances which justified the contest of election warranting a change in the official results.

The lower court, upon motion duly made, quashed the petition on the basis that the petition was not sufficiently precise. The petitioner appealed.

I believe that the refusal of the court below to permit a hearing in this case was a gross abuse of discretion, and I must dissent from the decision of this Court which affirms that unwarranted action below.

The Majority Opinion says: "The petition falls far short of legal requirements. The candidates-elect were entitled to know what charges they faced, but all that the petition vouchsafes them is the general allegation that 160 votes were illegally assisted. There is no mention of how or in what particular the Election Code was violated."

A voter may be assisted only for one of two reasons: illiteracy or physical disability. (Act of 1937,

---

[1] The petition really averred that 165 votes were given illegal assistance but, as stated by the Majority Opinion, five voters were alleged not to have been qualified voters in the district where they voted. Thus, the issue in the appeal will be restricted to a consideration of the 160 votes allegedly illegally cast.

[2] A petition was also filed in behalf of James Cooney, defeated candidate for school director. That petition will not be discussed because the principle of law involved in that contest is similar to the one in the Noonan appeal.

June 3, P. L. 1333, 25 PS §3058) What further specificity, therefore, is required in the petition? At the hearing which the petition prays for, it would be a very simple matter to ask the assisted voter if he is illiterate or was physically unable to see or mark the ballot. Wherein would the challenged candidate be disadvantaged in preparing for the hearing when he knows that the specific, direct charge against him is that he profited from illegalities caused by improper assistance of voters whose names are supplied to him in the petition? In addition the names of those who gave the illegal assistance are precisely spelled out. What more would Goekel need in order to be acquainted with charges facing him at a hearing on the contested election?

Improper assistance violates the election laws and contaminates the ballot. Improper assistance destroys the privacy of voting and, without that protective secrecy, the voter undergoes the coercion of partisan supervision. When a person enters a booth alone, he answers only to his conscience. When, however, being physically able to read and write, he must vote in the presence of another person, he surrenders independence and freedom of thought and action. This is specially true if the second person has a personal interest in the vote of the voter. It is charged in the petition in this case that in each instance the so-called assisting person belonged to the party supporting the candidacy opposed to that of the petitioner. Thus the petitioner suffered a very distinct, appraisable loss in each individual case where the voter was under the moral suasion of the opposing forces. It is a mystery to me how the Majority can see no wrong in so flagrant a violation of the letter and the spirit of the election law which goes to the very heart of the integrity of the ballot.

The Majority says that the petition should contain more particulars about the illegal assistance. In this it is asking for evidence which, of course, has no place in any petition or complaint. Justice AGNEW, with his habitual precision of expression, excellently put this proposition in *Election Cases,* 65 Pa. 20, 31, 36, when he said: "The proof of facts must follow, not precede the complaint. It is contrary to our sense of justice and to all analogy to say that a remedy shall not begin till the case has been fully proved. . . The evidence in support of the charge is a different matter, and need not be set forth or specified. The law does not demand it, and no analogy requires it. Indeed the reverse is true, for the court is required to 'proceed on the merits thereof,' indicating thereby that the proceeding is not to be embarrassed by technicalities."

In *Pazdrak's Contested Election,* 288 Pa. 585, 589, we quoted from the scholarly Justice MESTREZAT as follows: "The petition should aver plainly and distinctly such facts which if sustained by proof would require the court to set aside the result. In the language of the Act of 1874, it should 'concisely set forth the cause of complaint, showing wherein it is claimed the election is undue or illegal.' This is all the statute requires, and the court is not authorized to require more by construction. This will give the respondent sufficient information of the charges of illegality which he is required to meet. He is entitled to nothing more. If the statutes on the subject are intended to give the people a remedy for undue and illegal elections, as unquestionably they are, then we must construe them so as to effect the purpose intended. If the courts require anything in a petition beyond substantial averments, clearly disclosing wherein the election is undue or illegal, they will defeat the very purpose of the legislation on the subject."

The petition in the case at bar meets every requirement laid down in the Election Code and the decisions of this Court. The challenged candidate has been given, as stated in *Pazdrak*, "a reasonable notice of the character of the investigation, and that if successful the result will be changed." What more is needed? The petition embraces 111 paragraphs and covers 21 printed pages. It makes specific charges which demand an investigation, and at the same time it informs the challenged party of the charges he will be required to meet.

The Majority completely misreads and misapprehends the petition in this case, when it says that ". . . there is no allegation in the instant petition that any voter acted illegally or that his vote was not cast according to his will."

If a voter is given illegal assistance, it must follow that he voted illegally, since it would be impossible for him to receive assistance without his knowledge. Every person who votes is charged with knowing the election laws as much as the person who assists him to vote. And if the petition in this case charges that specified persons were given illegal assistance (as it indeed does charge) why isn't this the precise equivalent of saying that the voters voted illegally?

As already stated, a voter may be assisted only because of illiteracy or physical disability. If the voter takes assistance on the basis that he is illiterate or disabled whereas in point of fact he is completely well and able to read the ballot, and can mark his vote by pulling levers or tracing x's without assistance, the voter is obviously voting illegally. *It must not be overlooked that the voter who asks for assistance must swear under oath that he needs assistance.* Thus, by taking illegal assistance, he is committing perjury. And if this does not disqualify him as a voter, what can?

Why should one have to argue a matter that is as clear as the sun at noon at the equator?

Then the Majority says: ". . . we cannot allow the carelessness or even fraud of the election officers to defeat the election and frustrate the will of the electorate." But fraud of itself poisons the stream of the will of the electorate. The Majority assumes that the will of the electorate is something that speaks out entirely apart from the election machinery. *That* will can only be expressed through the ballot, and if the ballot is tampered with by the voter or by an election officer, the vote may not be counted.

The Majority Opinion treats the ominous subject of fraud with a disinterestedness which I find disturbing. Since the voter who was illegally assisted, the voter who did the illegal assisting and the election officer who supervised the assisting (and the assistance cannot be given without his knowledge) are all aware of the illegal voting, the resulting fraud must perforce destroy the legality of the illegally assisted voter's vote and, under no circumstances, must it be counted. The Majority Opinion ignores the principle that fraud is a corrosive acid which destroys whatever it touches. Fraud is the evil of evils. It embraces hypocrisy, deception, corruption, deceit. It is the match in the hayloft, the serpent in the garden, the weasel in the chicken yard, the spider in the web, the false bottom to the pool. Once it is established that a party to a transaction has committed fraud, no reliance can be placed on his statements, representations or argument.

Judge SMITH of the Superior Court said in 1905, with wisdom and perspicacity: "Fraud, while concealed, is beyond the reach of the law, yet 'concealment is itself indicative of fraud,' and, if unexplained, establishes a presumption of fraud which its author must rebut, or bear the consequences. *If a party*

*chooses to blend a claim which the law permits with one which it pronounces fraudulent,* in an attempt to enforce them by the same process, *he cannot look to the court to separate them,* and preserve the former while avoiding the latter. *Being united by the act of the party, they must stand or fall together, as a whole."* (Emphasis supplied. *Weiskircher v. Volk,* 29 Pa. Superior Ct. 611, 614.)

From the earliest days of the Common Law, fraud was recognized as a wolf at the door: "All deceitful practices in defrauding or endeavoring to defraud another of his known right, by means of some artful device, contrary to the plain rules of common honesty, are condemned by the common law, and punishable according to the heinousness of the offense." (Co. Litt. 3b; Dy. 295; Hawk. Pl. Cr. c.71; Bouvier's, Vol. 2, 1307)

The Majority Opinion would suggest that the vote of a voter who has consciously obtained illegal assistance should be accepted with the same stamp of purity accorded the vote of the man who has not wallowed in the swamp of deceit, his clothes dripping with the mire and the muck of foul and deliberate illegality.

The Majority Opinion urges upon us that the petition contains no allegation that any of the contested votes were cast contrary to the will of the involved voters. From this statement it is apparent that the Majority is of the impression that so long as a voter casts his vote according to his will, no harm results, no matter what illegality surrounds his casting of that ballot. But the Majority overlooks the salient and all-important fact that the vote of a corrupt voter is forfeit and cannot be counted at all. Every voter in this election who illegally received assistance, ipso facto lost his vote. How can it be otherwise if we are to preserve the honesty and integrity and the reliability of elections?

Let us suppose that it is proved incontestably, with camera, tape, marked money, and documents, that A, a voter, received $100 to vote for B, but that in the booth he actually voted for C, the candidate of his choice. Would any tribunal worthy of the name accept A's vote as legal and proper? Just as soon as A received the money in declared payment for his vote, he became disqualified as a voter, even though he later deceived the deceiver, the briber. It was argued in behalf of Lord Bacon, who accepted bribes as a judge, that he really was not guilty of corruption or fraud because in many instances his decisions were against those who had bribed him!

I agree with the Majority's statement that: "An election is not a private wrestling match between two opposing candidates but a demonstration of the public's electoral choice, and the rights of the public are to be kept paramount." And it is precisely for this reason that the petition to contest the election of November 3, 1959 in Wilkes-Barre should not have been quashed. The petition made serious charges. It protested that because of illegal voting, Goekel was declared elected although in fact he did not receive the number of legal votes needed to win the election.

In any event, if the court below believed that the petition should have contained further specifications, it could have easily allowed an amendment, which could and would have been forthcoming at once, because, as stated now for the third time, the reasons for assistance in voting are only two.

The Election Code specifically states: "The petition shall concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal, and after filing *may be amended with leave of court,* so as to include additional specifications of complaint." (Emphasis supplied)

The court below would not allow any amendments. Why? Wherein would anyone legally have been adversely affected by amendment of the petition? It is my opinion that the court acted in a very arbitrary manner and flagrantly abused its discretion in refusing to allow any amendment, and I believe that this Court has erred in not reversing the arbitrary action of the court below.

Charges of fraud in an election should be profoundly considered and not denied hearing because of the absence of a comma in the specifications of the fraud. An election not fairly won works an irreparable harm not only on the defeated candidate but on the general public as well because, to the extent that people may believe that elections are not zealously guarded, to that extent will they lose faith in the sanctity of the ballot.

The action of the Majority in this case has not advanced the cause of pure elections in Pennsylvania.