## Wallingford-Swarthmore School District Election

*G. Guy Smith,* for petitioners.

*David L. Grove,* for respondent.

REED, JR., J., April 3, 1974.—Petitioners, qualified electors from the Western Precinct of the Borough of Swarthmore, filed the instant petition contesting the election of school director in Region No. 3 of the Wallingford-Swarthmore School District. On Tuesday, November 6, 1973, a municipal election was held throughout the County of Delaware. In this Region No. 3, the Republican candidate for school director was Daniel H. Jackson and the Democrat was Ann D. Hazard. The regional election return to the county board of elections indicated that Ann D. Hazard received 1,279 votes and Daniel H. Jackson received 1,268 votes. The county board of elections certified Ann D. Hazard as the elected school director. Her margin of victory was only 11 votes.

On Sunday, November 25, 1973, prompted by a petition filed by several electors from the Western Precinct of the Borough of Swarthmore, the county board of elections examined and determined that vot-

ing machine no. 51211, one of the machines used, failed to operate properly. An internal mechanical malfunction made it impossible to pull the Republican Party lever. The individual candidate and the question levers all functioned properly.

Petitioners seek to overturn, void and invalidate the entire election, or, at least, the election for school director in this region. Preliminary objections in the nature of a motion to quash and a demurrer were filed by respondent, Ann Hazard. Following argument before the court en banc, the court reserved decision on the objections, but due to the nature of the case ordered it to hearing on January 14, 1974. Both parties then presented testimony and were granted leave to file briefs after the testimony was transcribed. All of this has been accomplished, and the case is now before us for disposition.

First, the preliminary objections filed herein are now dismissed. An election case is of such importance and imminence to candidates, the political parties, and, above all, to the public, that, except in the clearest instances, when a petition to contest an election raises a valid question, as a general rule a full hearing should be afforded. See Commonwealth ex rel. Witman v. Ramsay, 166 Pa. 642, 31 Atl. 345 (1895); Madigan Appeal (Pfuhl v. Coopersmith), 434 Pa. 361, 253 A. 2d 271 (1969):

The salient facts are relatively simple, and in accord with section 1773 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3473, are stated as follows:

## FINDING OF FACT

1. At the municipal election held on Tuesday, November 6, 1973, one of the offices to be elected was

that of school director to represent Region No. 3, of the Wallingford-Swarthmore School District, in Delaware County. This region is comprised of Swarthmore and Rutledge Boroughs.

2. The Democratic party candidate for school director for Region No. 3 of the Wallingford-Swarthmore School District was Ann D. Hazard, and the Republican party candidate for said office was Daniel H. Jackson.

3. Petitioners are citizens and qualified electors of the Western Precinct of the Borough of Swarthmore.

4. The official records for this election of the Delaware County Board of Elections showed two machines were used at the polling place for the Western Precinct, Borough of Swarthmore; being machines nos. 51210 and 51211. The records indicate that 430 electors entered machine no. 51210 and 434 electors entered machine no. 51211.

5. According to the official sheets of the Delaware County Election Board, the votes cast broken down in this region for Mrs. Hazard and Mr. Jackson were as follows:

|  |  | Hazard |  | Jackson |
|---|---|---|---|---|
| Rutledge |  | 234 |  | 131 |
| Swarthmore |  |  |  |  |
| North Precinct |  | 349 |  | 382 |
| Swarthmore |  |  |  |  |
| East Precinct |  | 335 |  | 337 |
| Swarthmore |  |  |  |  |
| West Precinct |  |  |  |  |
| Absentee | 10 |  | 6 |  |
| Machine No. 51210 | 177 |  | 227 |  |
| *Machine No. 51211 | 174 | 361 | 185 | 418* |
|  |  | 1,279 |  | 1,268 |

6. On November 25, 1973, as a result of a petition being filed with the Delaware County Board of Elections, machines Nos. 51210 and 51211 were opened in a proper manner. The *Republican straight party lever* in machine in machine no. 51211 in the Western Precinct of the Borough of Swarthmore was inoperable in that this lever could not be pulled, i.e., moved to register a vote. This defect was readily apparent to a voter attempting to use this lever.

7. A voter using machine *no. 51211* could not have opened the curtain lever to exit the machine unless the voter had activated at least one voting lever.

8. The judge of election at the polling place for this western precinct adopted the procedure of advising voters to use the small levers when questioned about the malfunction in machine *no. 51211.*

9. The Delaware County Bureau of Election *received no complaints or requests to repair* machine *no. 51211* on November 6, 1973.

10. The following named individuals, 12 in number, were registered voters and qualified electors in the Western Precinct of the Borough of Swarthmore as of November 6, 1973, and voted in *machine no. 51211.*

a. Mrs. Suzanne C. Bernard, of 605 University Place, Swarthmore, Pa.

b. Mrs. Mary W. Rhodes, of 430 Strath Haven Avenue, Swarthmore, Pa.

c. Mrs. Thelma Harry, of 1 Drexel Road, Swarthmore, Pa.

d. Mrs. Elizabeth Turner Gilfillan, of 410 Yale Avenue, Swarthmore, Pa.

e. Mrs. Dorothy M. Fox, of 550 Rutgers Avenue, Swarthmore, Pa.

f. Mrs. Priscilla G. Blackman, of 518 School Lane, Swarthmore, Pa.

g. Mrs. Laura P. Williams, of 603 University Place, Swarthmore, Pa.

h. Mr. Robert J. Starr, of 536 Westminster Avenue, Swarthmore, Pa.

i. Mr. John B. Cushing, of 506 Drew Avenue, Swarthmore, Pa.

j. Mr. Ralph Leo Stimmel, of 625 University Place, Swarthmore, Pa.

k. Mr. Howard G. Hopson, of 625 Rutgers Avenue, Swarthmore, Pa.

l. Mr. Robert N. Hilkert, of 409 Strath Haven Avenue, Swarthmore, Pa.

11. The testimony of the aforesaid citizens who appeared as witnesses, *with the exception of two* of them, indicated that they were aware of the malfunction of the Republican lever, and on their own initiative or at the suggestion of election board officials, cast their respective votes by using the individual levers for candidates.

12. Only one witness-voter testified that he pulled the Republican *party lever and no others*. This testimony is doubtful and of no weight as a matter of fact, since he could not exit the machine without pulling at least one lever.

13. Only two witnesses-voters testified that they pulled only the Republican party lever and a "question" lever on machine *no. 51211;* this would allow an exit of the machine.

14. There is no evidence that any person committed any fraudulent or unlawful act or practice in connection with the election in the Western Precinct of Swarthmore on November 6, 1973.

15. There is no evidence that, but for the stated malfunction in machine no. 51211, Daniel H. Jackson would have received any more than 185 votes in that

machine. (The return gave him 185 votes from no. 51211).

16. There is no evidence that respondent, Ann Hazard, was not duly elected school director for region no. 3, or that the county board of elections improperly or incorrectly issued a Certificate of Election to her.

## DISCUSSION

Petitioners assert that the school director election should be set aside and a vacancy in said office should be declared under the Election Code. In order to do so, we would be required to apply section 1772 of the Election Code, 25 PS §3472, or use the court's plenary powers under section 1764, 25 PS §3464 to nullify and overturn the entire election: Wilkes-Barre Election Contest, 400 Pa. 507, 162 A. 2d 363 (1960); Election Cases, 65 Pa. 20 (1870); Neshaminy School District Election Contest, 45 D. & C. 2d 105 (1968), and Perles v. Northumberland County Return Board, 415 Pa. 154 202 A. 2d 583 (1964).

The Pennsylvania Election Code of June 3, 1937, P. L. 1333, art. XVII, sec. 1772, 25 PS §3472, provides as follows:

"Whenever in any contested nomination or election, the tribunal trying the case shall decide that the ballots or ballot labels used in one or more election districts, *by reason* of the *omission, addition, misplacing, misspelling* or *misstatement* of one or more *titles of office,* or *names of candidates, or parties or bodies represented by them, were so defective* as to the office in contest as to be calculated to mislead the voters in regard to any of the candidates nominated or seeking nomination for said office, and that the *defective condition* of the said *ballots* or *ballot labels may have affected the result of the entire primary or election* for said office, the said tribunal shall declare the primary or election to be invalid as regards the

said office, and in the case of elections shall report their decision, in cases where vacancies in such offices are filled by appointment, to the proper officer or officers who are by law authorized to fill vacancies occurring in such office, who, upon receipt of such notice, shall, without delay, proceed to appoint a suitable person or persons to fill the vacancies thus created, and the person or persons so appointed shall continue in office until the next election succeeding his appointment at which such office is by law required to be filled. All other vacancies so created shall be filled in such manner as now or hereafter may be provided by law, and all vacancies in nominations so created shall be filled in the manner provided by section 979 of this act."

A close reading of the above section demonstrates that it is not applicable to the instant case. Petitioners have not alleged nor proved that any ballots or ballot labels were omitted, added, misplaced, misspelled or misstated any title of office or the names of candidates, or parties represented by them in such a manner as to mislead any voter or that such a defective condition *may have affected the result of this election.*

The voting process, like many others in our society, lends itself to increased automation. Mechanical voting machines have nearly everywhere replaced the use of paper ballots. This change presents the possibility of jeopardizing the election outcome as in this case, when a mechanical breakdown or malfunction occurs and goes uncorrected. Even so, a safe guide has been provided for our deliberations: "Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it": Norwood Election Contest Case, 382 Pa. 547, 116 A. 2d 552 (1955). Of course, a diligent response to mechanical malfunctions by local boards of elections will, and in most instances does, greatly minimize the problems which have or may occur.

In the instant case, machine no. 51211 could have been promptly shut down until repaired. Immediate notice to the county board of elections should have been given. We understand this malfunction could easily and simply have been repaired by the county board.

The failure of parties having an interest in the outcome of an election to take timely and proper steps to remedy an error has been found to be a ground for *ruling against an election contest petition:* Upper Adams School District Election Contest, 49 D. & C. 2d 121 (1969).*

Since we have held that the conditions spelled out in section 1772 for invalidating an election were not created by this mechanical malfunction, we are limited to the use of our plenary powers under section 1764, 25 PS §3463. The fact that the legislature has expressly provided in section 1772 when and how an election may be invalidated shows legislative intent to restrict or limit the setting aside of an election to only those instances where the conditions set forth in section 1772 are found to have existed, and where it is found that the existence of those defective conditions may also have affected the results: Expressio unius personae est exclusio alterius.

The power to void an entire election is extremely serious, and can be exercised only with the utmost care, restraint and concern; for neither individual voters nor groups of voters are to be disenfranchised except for the most compelling reasons: Bauman Election Contest Case, 351 Pa. 451 41 A. 2d 630 (1945). For this reason, an election can be voided "only when the illegal acts are so irregular and the election so infected with fraud that the results cannot be ascertained": Wilkes-Barre Election Case, supra.

---

* The names of four candidates were omitted from the ballot in one district.

In the present case, there is no evidence of fraud nor of illegal acts. There is only indisputable evidence of a mechanical lever obviously and plainly failing to properly operate. The testimony is to the effect that when an attempt was made to pull the straight Republican party lever, it did not pull. We note that, finding this, evidently the voters went on to pull the individual candidate levers.

All but two of the witnesses presented by the contestants readily became aware of the defect, and either requested instructions from the election board or independently went on to pull the individual levers. This is not that type of hidden defect which would lead a voter to believe his vote had been properly registered when it had not in fact.

In all, we only know of two voters who "pulled" the Republican party lever, and failed to go on, though having voted on a question.

While we recognize that the disenfranchisement of even one person validly exercising his right to vote is an extremely serious matter, we cannot consider voiding this election on the basis of two votes. We note also, that a total of 434 entered machine 51211, and 430 machine 51210; 404 were cast for these candidates in 51210, and 359 in 51211. This disparity between the tabulations from each machine presses us to make explanation, but we are likewise restrained to do so. Any explanation has to be premised upon speculation as to the reason for the disparity. There exists a number of reasons, to pick one is arbitrary. The law recognizes the dangers in such a course, and prevents speculation, to preclude what would amount to "speculative tampering" with an election. We do not speculate or guess as to how many votes might have been cast, if any, nor as to how they were cast, or as to a different final result, if the lever in question had been properly functioning. As was stated

in Winograd et al. v. Coombs et al., 342 Pa. 268, 20 A. 2d 315 (1941): "Judicial decrees cannot be founded on possibilities. To entitle appellants to the decree they ask for requires proof of fraud or other unlawful practices of such magnitude and so interwoven with the casting and counting of the votes as to obviously deprive the election returns of all validity."

At the hearing on this matter, the respondent raised a timely objection to the testimony of the voter-witnesses as to how, in part, they attempted to vote in the general election. Respondent's objection to such testimony was and is based on the sound public policy of not requiring a witness to testify as to how he voted. See in re Thomas A. Crowley et al., 57 Dauph. 120, and Neshaminy School District Election Contest, supra. In view of our decision in this matter, we find this objection to be now mooted. We also note that none of the witnesses testified for whom he, in fact, voted, nor were any required to testify.

## ORDER

And now April 3, 1974, for the reasons stated in the foregoing opinion, it is hereby ordered and decreed that the election held on November 6, 1973, for the office of school director for Region No. 3 of the Wallingford-Swarthmore School District was valid and the petition to declare said election void is hereby denied.

It is further ordered that notice of this decision, consisting of this order and accompanying opinion, shall be forthwith reported to the county board of elections.

The costs of the within proceeding shall be paid by the County of Delaware and the bond filed by petitioners is remitted.