## Election of Tax Collector of W. Bethlehem Twp.

*Peter M. Suwak,* for petitioner.
*John Solomon,* for respondent.

TERPUTAC, *J.,* January 9, 1986—At the general election held on November 5, 1985, the returns for the office of Tax Collector of West Bethlehem Township, Washington County, showed that respondent Gertrude Gongolski had won, 198 to 194 votes. On November 25, 1985, 20 registered voters of West Bethlehem Township presented a petition for election contest on behalf of Candace Corlazzoli, requesting the court to declare Corlazzoli the win-

ner and declare the election return in favor of Gongolski to be false; alternately, petitioners requested the court to order a special election for the office of tax collector.

The petition has challenged not only the process by which the absentee balloting was conducted, but also the entitlement of specific absentee voters to use the absentee balloting procedures. With respect to the voters themselves, Corlazzoli has challenged seven electors who voted by absentee ballot, averring that the testimony shows each of them voted Democratic. Although there was no testimony whatsoever as to how any of them voted, she urges the court to infer from the remarks and conduct of a committeewoman during and before the election that all of the challenged ballots were straight Democratic. But if the court is unwilling to make such an inference, Corlazzoli still requests the court to declare the election for tax collector void and order a new election.

The 20 petitioners who signed the petition were requested to do so by Corlazzoli. Counsel for respondent alleged that at least five of the petitioners did not understand the document when they signed it. Testimony taken on this issue indicated that five of the signers thought they were signing a petition for a recount of the balloting, rather than a petition for an election contest. These persons also did not read the petition before signing. The court denied respondent's motion to strike the petition and dismiss it. There has been no proof of fraud, coercion, intimidation or overbearing conduct. Each signer knew there would be some kind of election dispute for the office of tax collector. That he or she did not fully understand the nature of the dispute is immaterial. A person signing a document — in the absence of fraud, coercion, intimidation or other over-

bearing conduct — is bound by his or her signature. The court cannot allow persons who voluntarily sign a petition to contest the validity of their signatures by asserting they did not read it. Since the signers were aware of the general nature of the petition and since they signed it voluntarily, the petition must stand. The motion to strike the petition was properly denied. Standard Venetian Blind Co. v. American Empire Insurance Co., 503 Pa. 300, 469 A.2d 563 (1983).

Fundamentally, the attack mounted by Corlazzoli is twofold: (1) that the proper procedures for conducting and counting the absentee ballots were not followed, and (2) that seven of the absentee ballots are void because of violations of the Election Code. If enough of the absentee votes are declared void by the court, Corlazzoli reasons that she is the winner, for the court must necessarily infer that these electors voted straight Democratic: seven votes for Gongolski. Although both candidates belong to the Democratic party, Gongolski was nominated as the Democratic candidate and Corlazzoli as the Republican. Regardless of Corlazzoli's exhortation that the court may infer that the absentee electors voted Democratic because of the testimony of some witnesses who thought the voters had done so, it is clear to the court that no such inference can be drawn. Nothing in the record shows how these electors voted. Such an inference is highly inappropriate.

Further, may the court through an election contest invalidate individual absentee votes when no challenges were made by anybody to the absentee ballots at the time they were mixed with the general ballots by the local board? Corlazzoli insists the court must declare the election void because proper procedures were not followed, and yet she says it

was unnecessary for her to have challenged the absentee ballots before the local board.

One of the many freedoms we enjoy as American citizens is the right to vote in a free election by secret ballot. That many Americans foolishly fail or refuse to cast their ballots does not denigrate this important right. In Contested Election of E.R. Wheelock, 82 Pa. 297, 299 (1876), the court said:

"An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings."

In a much later case, the Pennsylvania Supreme Court in Wilkes-Barre Election Contest, 400 Pa. 507, 513, 162 A.2d 363, 366 (1960), quoting Ayre's Contested Election, 287 Pa. 135, 134 Atl. 477 (1926), stated:

"An election is not to be held void for mere irregularities in the conduct of the election, even though the election officers may be subject to punishment for misconduct; the rights of voters are not to be prejudiced by the errors or wrongful acts of election officers."

Consequently, even if the courts finds irregularities in the method of processing the ballots on the part of election officers and even though the officers might be subject to violations of the Election Code, the rights of the voters should not be prejudiced by errors or willful acts of election officers, unless there is fraud, coercion, intimidation or other unlawful conduct as to make the election a mere travesty

tending to defeat the will of the voters. Winograd v. Coombs, 342 Pa. 268, 20 A.2d 315 (1941); Gollmar's Election Case, 316 Pa. 560, 175 Atl. 510 (1934); Election Contest for Treasurer, 45 Wash. Co. Rep. 34 (1964). In the last-mentioned case, arising out of this county, the record showed that the following irregularities had occurred: (1) that the ballot box was brought from the precinct by someone other than the Judge of Elections; (2) that the local board improperly counted the ballots; (3) that the tally sheets were not properly signed by all the election officers required by law to sign them; and (4) that the voters who needed assistance to vote did not "distinctly and audibly first swear" as to their reasons for requiring assistance. This court refused to declare the return false or to throw out the ballots.

I. Failure to Challenge the Absentee Ballots

Those who wish to vote by absentee ballot must first obtain an application from the county election board. Section 3146.2(e)(2) of the Election Code, as amended, 25 P.S. §3146.2(e)(2) (Supp. 1985), states:

"The application of any qualified registered elector who is unable to attend his polling place on the day of any primary or election because of illness or physical disability . . . shall be signed by the applicant . . . . In addition, the application of such electors shall include a declaration stating the nature of their disability or illness, and the name, office address and office telephone number of their attending physician . . . ."

Subsection (e.2) states:

"Notwithstanding the other provisions of this act any qualified elector who expects to be or is absent from the Commonwealth or county of his residence because his duties, occupation or business require

him to be elsewhere on the day of any election may make an application for an absentee ballot . . . ."

Subsection (e), of the Act of July 11, 1980, P.L. 600, 25 P.S. §3146.8(e), requires the local board to examine the declaration on each envelope and to compare it to the absentee voter's list sent down by the county election board. If the local board is satisfied that the declaration signed by the elector is sufficient and the name conforms with the name on the list verifying the right to vote, the local election board "shall announce the name of the elector and shall give any watcher present an opportunity to challenge any absentee elector upon the ground or grounds [and what follows are the reasons for the challenges]." Id. Subsection (f) provides that a person challenging an application for an absentee ballot must make that challenge before the county election board, and further provides that a person challenging the absentee ballot must make that challenge before the local election board. In any case $10 in cash must be deposited for each challenge. No challenges were ever made at either level. Although the names were not announced by the local board, this irregularity is not sufficient to invalidate the votes. We also find that there was an opportunity to make challenges even though the names were not announced.

Nevertheless, Corlazzoli contends she may now challenge the absentee ballots by means of an election contest as an alternative to challenges made to the board. One of the absentee electors marked his application for an absentee ballot by giving the reason "won't be here." But on November 4, 5 and 6, 1985, he worked the regular shifts at the Marianna Mine near his home. Two others, nos. 2 and 3 in petitioner's brief, marked their applications with the reason stated as "not going to be home." Both of

these voters were indeed at home on election day. Corlazzoli argues, therefore, that electors nos. 1, 2 and 3 have voted illegally and that their votes should be declared void. What she has failed to point out, however, is that the Election Code speaks of an elector who "expects to be or is absent from the Commonwealth or county of his residence. . . ." 25 P.S. §3146.2 (e.2). Corlazzoli has not shown that these electors might have intended to be away but for some reason were not. For example, if a voter was expecting to be in New York City on business on election day but at the last minute his plans were cancelled, it could not be seriously contended that his absentee ballot is void. Because the proof is insufficient to invalidate these votes, they might not be subject to a successful challenge.

An additional reason to invalidate the absentee ballots of electors nos. 2 and 3 is that they did not sign their applications. The county election board should not issue ballots to those who have failed to sign the application. 25 P.S. §3146.2(e)(2). For this reason the ballots might be subject to appropriate challenges.

Four more challenges through the election contest, cited in petitioner's brief as nos. 4, 5, 6 and 7, are based on charges that the electors were not so ill or physically disabled as to cause them to be unable to vote at the polls. There was testimony that some of them attended a victory party for Gongolski about two weeks after the general election. As to another one, there was testimony that her brother visited her several times during the month of November, including the week of November 5, and that she was getting around. What petitioner has not proved is that each of these electors could have voted on election day. A person may be healthy a few days before the election or a few days after, but the issue is

whether the elector is ill or physically disabled on voting day. To vote by absentee ballot for medical reasons, one must be unable to appear at the polls because of illness or disability. In Re Challenges of Absentee Ballots, 44 Wash. Cty. Rep. 178 (1965). Mere inconvenience in getting to the polls does not entitle one to an absentee ballot. In Re 223 Absentee Ballot Appeals, 81 York 137 (1967). As to the voters who claimed illness and disability, nos. 4, 5, 6 and 7, we hold the evidence to be credible and sufficient permitting the ballots to be counted. Assuming, *arguendo*, that the two ballots of electors 2 and 3 could have been properly challenged, Gongolski would still be the winner by two votes. This assumption is only that — an assumption — for there is no assurance how these absentee electors voted for the office of tax collector.

Since the challenges were not properly made to the county election board or to the local board in accordance with the Election Code, and since the $10 fee was not paid, the ballots may not be invalidated. Therefore, unless there is fraud or some other grave irregularity in the election process, these votes are valid.

## II. The Election Contest

Whether the entire election for an office can be set aside by the court because of irregularities on the part of the officers conducting the election is a matter of importance.

"The courts have never been able to lay down a precise standard by which it can be determined in a given case whether the irregularities are of sufficient magnitude to justify the rejection of an entire poll in any district in which the question arises. The facts in each case must be considered and a determination reached as to whether justice is more likely to be done by counting the votes, despite the ir-

regularities, or by refusing to count them because of the irregularities." Appeal of Simon, 353 Pa. 514, 519, 46 A.2d 241, 245 (1946).

None of the irregularities mentioned so far is sufficient to cause a rejection of the votes cast for this office. Along with the charges levied by Corlazzoli about the procedures in counting the absentee ballots, she avers that Mary Cicci, Democratic committeewoman in the township, had intervened in the electoral process as to cause a breakdown in the conduct of the election. That Cicci knew all the absentee voters is immaterial. That she procured most of the absentee ballot applications is equally immaterial. Do her other activities rise to the level of causing fraud or a breakdown in the electoral process? We think not.

Petitioner introduced testimony that Cicci had said on election day that she needed five or seven more votes for her candidate, Gertrude Gongolski. There was also testimony that Cicci had stated to the county controller, perhaps a week or so before election day, that she had delivered absentee ballots to the county election board and that all of them were straight Democratic votes. To regard such a statement as shocking or unusual is to engage in naive thinking. It is common practice for persons actively supporting candidates to utter statements of support and exclamations of the importance of the supporter.

From this testimony petitioner has asked the court to infer that Cicci somehow intervened in the electoral process and conducted herself so improperly that the election was subverted. We recognize that by virtue of §3146.6(a) the absentee voter must sent the envelope containing the ballot and its envelope to the county election board or deliver it in person. There is no testimony linking Cicci to an at-

tempt to influence voters improperly or to coerce them. Nor is there any testimony that she participated in overbearing conduct or that she signed a voter's name to the documents. Although she had obtained some of the absentee applications and had delivered at least five completed envelopes with ballots to the county election board, we hold that these activities do not prove fraud, coercion, intimidation or other unlawful conduct as to make the election a mere travesty tending to defeat the will of the voters.

After the polls closed on election day, the local Judge of Elections and her officers took the absentee ballots out of their envelopes and mixed them with the other ballot cards. However, the local board failed to retain the envelopes which contained the declarations and signatures of the absentee voters. Instead, the board threw away these envelopes (an example of which is Exhibit 2) and failed to return the documents as prescribed by the Election Code to the county election board. The large envelope (an example of which is Exhibit 1), which should have been sent to the county election board, was not sent or was returned empty and without any identifying markings.

In sum, we hold that the proper method to challenge the absentee ballots themselves under the Election Code is by making the challenges either before the county election board or the local board and paying the required fee of $10 for each challenge. Since the statutory method of challenging was not used, any attempt to make those challenges by way of an election contest is improper. Further, we hold that the credible, competent evidence is in favor of respondent. Because Corlazzoli has not proved fraud, coercion, intimidation or other unlawful conduct as to make the election a mere travesty

tending to defeat the will of the voters, the petition is denied. Winograd v. Coombs.

## ORDER

And now, this January 9, 1986, the petition for election contest is denied and dismissed. It is further ordered, adjudged and decreed that Gertrude Gongolski is the winner for the office of Tax Collector of West Bethlehem Township. The vote as finally tabulated and certified shall stand.