## Winograd et al., Appellants, v. Coombs et al.

Argued May 13, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thompson Bradshaw,* of *Bradshaw, McCreary & Reed,* for appellants.

*Wayne S. Luce,* with him *John G. Marshall,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE MAXEY, May 26, 1941:

This was a proceeding asking a court of equity to declare a certain election void. In the Borough of Rochester, Beaver County, the following question was submitted on November 5, 1940, to the electors: "Do you favor the . . . exhibition of motion pictures, regardless of whether an admission charge is made or incidental thereto or whether labor or business is necessary to . . . exhibit the same after two p. m. on Sunday?" In this Borough there are four wards; the second ward had two election precincts. The County Election Return Board computed and tabulated the results of the election as follows: Ballots marked "Yes" 1465 and those marked "No" 1552. The bill of complaint filed in this case by Emil Winograd, as a citizen and elector of the First Ward of Rochester Borough, and the Rochester Amusement Company, which operates two motion picture theatres in that Borough, alleged that there were 38 ballots missing and unaccounted for in the entire five election districts. It also alleged that there were 191 ballots "void or blank, and with a few excep-

tions were so because the electors had been permitted to deposit their ballots without first tearing off the identifying number" and that the "election was so negligently, carelessly, and indifferently conducted by the Election Boards in each of said election districts, . . . that said election is void and of no effect, and the returns thereof do not show the true result thereof." Among the irregularities cited in the bill of complaint are that the election officials "permitted electors to whom ballots had been lawfully issued to leave the polling place without having deposited their ballot in the ballot box", that they "permitted ballots in large numbers to be left in and about the polling place and in the polling booths by electors to whom they had been lawfully issued, whereby said ballots came into the hands of other electors . . . thus enabling other electors wrongfully and fraudulently to vote the same," that "certain election officials and other persons . . . gathered up ballots which had been lawfully issued to electors, and which had wrongfully been left about the polling place, and deposited the same in the ballot box", and that the "election officials did not enforce the election code by requiring electors to tear off the numbers on their ballots, such that a large number of ballots, aggregating 172, were fouled and spoiled, and accordingly not counted by reason of the attachment of the numbers thereto when deposited in the ballot boxes."

The court below found on competent evidence certain facts and among them are these: "That of the total ballots distributed, 21 were returned as missing . . . because they were destroyed or carried from the polling place by the voters. That said 21 missing ballots in no way affected the returns as to ballots found in the ballot boxes and unused ballots. . . . That of the 85 missing, void or blank ballots, as returned by the Election Board of said Third Ward Precinct, the Recount Board found 17 valid ballots, all voting 'No', and thus the Recount Board increased the 'No' vote from 377 to 394. . . . That any one of the 21 missing referen-

dum ballots might have been used to start chain voting." The court adds to this last finding: "There is no evidence that any were so used. . . . There is no evidence of fraud, crime or gross negligence, under the circumstances, of any election official. The court further found that "the missing 21 ballots were gone—not counted 'Yes' or 'No'—had no effect on the result—and appear in no way except as missing." The court in its discussion said: "As the defendants called no witnesses there is no conflict of testimony, and our Findings of Fact are all on the evidence of the plaintiffs." The court held that the facts do *not* "constitute such irregularities in the Sunday Motion Picture Referendum Election . . . as to invalidate it."

The court correctly concluded that "in case of fraud or mistake in an election it is the duty of the court to purge such fraud or mistake, if such is possible, and to amend the return accordingly. . . . An election cannot be declared void for negligence or innocent error on the part of election officers;" and that no such fraud was shown here as to entitle plaintiffs to the decree prayed for. The court after declaring that the election in all the voting precincts "was regularly conducted, the returns are correct, and entitled to be certified," dismissed the bill.

Counsel for appellants concede that no fraud was commited at this election. The claim is that the carelessness of the election officers in certain districts made fraud possible. Judicial decrees cannot be founded on possibilities. To entitle appellants to the decree they ask for requires proof of fraud or other unlawful practices of such magnitude and so interwoven with the casting and counting of the votes as to obviously deprive the election returns of all validity. Irregularities on the part of election officers may be such as to warrant criminal proceedings against them and yet not affect the integrity of the returns. It is only when an election has been characterized by such fraud or intimidation or other unlawful conduct as to make the election a

mere travesty or when the ballots or voting machines (as the case may be) are in such condition that it is impossible to ascertain from an inspection of them the will of the voters that a court will reject the entire returns from a district and annul the election.

In *Contested Election of E. R. Wheelock,* 82 Pa. 297, this court affirmed Per Curiam the judgment of the Court of Quarter Sessions of Warren County, saying that the grounds had been "sufficiently stated in the opinion of the court below." In that accepted opinion appears the following statement: "An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings. When, however, it is alleged that there is actual fraud in the election, or that the ballot-box has been tampered with, or illegal votes received, or the careless or fraudulent acts of the officers have mixed and confused the ballots, the duty of the court is equally plain, and every legal facility should be afforded to purge the poll; and when the acts of the officers are so fraudulent and irregular that the result cannot be ascertained, then the entire poll is rejected."

We said in *Fish's Election,* 273 Pa. 410, 117 A. 85: "To eliminate an entire poll, though no harm has actually been done, merely because public officials did not perform their duty properly, would result in the very wrong sought to be prevented; for if they are unscrupulous . . . they can wrongly fit up the election room and booths in every district which they desire shall be thrown out, and thus indefinitely control elections."

The decree is affirmed at the cost of the Rochester Amusement Company, appellant.