**In re General Election of Nov. 4, 1975 (No. 2)**

84

*Marshall E. Anders, Andrew Maier* and *Sidney L. Krawitz,* of *Krawitz, Sigal & Ridley,* for contestant.

*John Stich* and *Robert Kayton,* of *Kayton, Schneider, Davis & Levy,* contra.

WILLIAMS, *P.J.,* December 18, 1975—

FINDINGS OF FACT

1. Harlan James Crellin and George E. Coutts, along with Warner Depuy and James R. Duffy, were candidates for election to the Office of County Commissioner at the General Election held November 4, 1975.

2. A computation of the returns made by all

election districts in the county by the district election boards to the county board of elections show the following result:

| | | |
|---|---|---|
| Warner Depuy | (R) | 3019 |
| James R. Duffy | (D) | 2910 |
| George E. Coutts | (R) | 2384 |
| Harlan James Crellin | (D) | 2338 |

3. That the official returns shown on the general and duplicate return sheets from Shohola Township show the following results:

| | | |
|---|---|---|
| James R. Duffy | (D) | 318 |
| Warner Depuy | (R) | 162 |
| George E. Coutts | (R) | 98 |
| Harlan James Crellin | (D) | 23 |

Included in said totals are the absentee ballot votes cast in the district which were:

| | | |
|---|---|---|
| James R. Duffy | (D) | 21 |
| Warner Depuy | (R) | 14 |
| George E. Coutts | (R) | 9 |
| Harlan James Crellin | (D) | 5 |

4. That on November 10, 1975, a petition to recanvass the vote in Shohola Township was filed. On November 24, 1975, Judge James R. Marsh, acting as the County Election Board, after a hearing on the petition, caused vote to be recanvassed and the voting machine tested.

5. During the test, 111 votes were cast for Harlan James Crellin by pulling the Democratic lever. Ten votes were cast for Harlan James Crellin by pulling the individual lever for Harlan James Crellin.

Out of the 121 votes so cast, the machine registered 29½ votes cast for Harlan James Crellin.

6. That a check of the proof sheet on the voting machine showed no discrepancy in the number of votes recorded for any candidate on said sheet when compared with the number of votes shown on the general and duplicate return sheets filed with the county board.

7. There is no evidence showing when the malfunction of the machine occurred. It cannot be determined from the evidence whether it existed during the time of its use at the election or whether it occurred subsequent thereto.

8. There appeared at the hearing held November 24, 1975, 70 qualified voters of the Shohola Election District and it was stipulated that if called as witnessess, each would testify that he or she had voted for Harlan James Crellin at the November 4th election.

9. After argument of counsel, Judge Marsh, acting as the county election board, entered the following order:

"AND NOW, November 24, 1975, the Board finds that the testing of the machine reveals that the counting device under 3A did not upon the test accurately portray the voting cast under that column in that 111 ballots were cast for that column under the straight party ticket for that office, that an additional ten votes were cast on the individual's name on that column, and the Board further finds that 111 straight party ballots were cast that would affect column 3B, and that an additional ten ballots were cast under 3B as an individual, and that those figures did register on the counting device.

"The Board further finds that there is no way that the Board can determine the number of persons who did cast a ballot for 3A, and therefore cannot determine a true voting total relationship between 3A and 3B.

"The Board finds that the print-out of the votes cast prior to the testing was the same as the print-out taken at the close of the polls on November 4, 1975, and that there appears no discrepancy between the two print-outs.

"The Board has taken considerable effort to preserve the evidence in relation to the machine so that both parties might have equal access to the facts for any submission to a Court sitting as a Court for the Court to determine either a winner or a vacancy.

"The Board believes it to be without power to name a winner except upon the concept that the print-out shall be prima-facie evidence of the outcome of the voting, but being prima facie evidence is subject to rebuttal.

"The Board further believes that it is without power to declare a vacancy or to set aside the votes of those that have been counted in the light that the result of the setting aside of votes that have been counted or in the speculation of votes that have not been counted would change the final result of the election, that the results of the examination of the machine today do not support an increase in votes, and in order to place the matter so that it might properly be litigated by the Court sitting as a Court the Board will accept the prima-facie evidence of the print-outs and make the return that Mr. Coutts is the apparent winner."

10. On November 25, 1975, the election board

entered a final certification of the results of the November 4, 1975, election, except as to Harlan James Crellin and George E. Coutts. The order is as follows:

"AND NOW, five days after the completion of the within computation of votes, no petition for a recount or recanvass having been filed in accordance with the provisions of the Election Code, or in case of petition, the revision directed by the Court of Common Pleas having been made, we certify the within return of votes cast as being true and correct. Except as to Harlan James Crellin and George E. Coutts, candidates for Commissioner."

11. Certificates of election were issued to all candidates on November 25, 1975, except George E. Coutts and Harlan James Crellin.

12. No appeal, contest or exception to the aforesaid final certification is pending.

13. Both Harlan James Crellin and George E. Coutts have filed timely appeals from the decision of the county election board.

## THE CRELLIN APPEAL

The Crellin appeal asks that we set aside the votes cast for the two appellants and certify Harlan James Crellin as the winner of the general election and grant such other relief as may be proper.

In passing upon appellant's request, we point out:

(1) There is a legal presumption in favor of the legality of an election: Kittanning Country Club's Liquor License Case, 330 Pa. 311, 198 Atl. 91 (1938).

(2) "Judicial decrees cannot be founded upon

possibilities." To entitle appellants to the decree they ask for requires proof of fraud or other unlawful practices of such magnitude and so interwoven with the casting and counting of votes as to obviously deprive the election returns of all validity.

". . . It is only when an election has been characterized by such fraud or intimidation or other unlawful conduct as to make the election a mere travesty or when the ballots or voting machines (as the case may be) are in such condition that it is impossible to ascertain from an inspection of them the will of the voters that a Court will reject the entire returns from a district and annul the election": Winograd et al. v. Coombs et al., 342 Pa. 268, 271, 272, 20 A2d 315 (1941).

(3) Section 3154(d) (2) of the Election Code of June 3, 1937, P. L. 1333, as amended, 25 P.S. §3154, provides that when the proof sheets in the voting machine are compared with the general and duplicate return sheets and they agree, as they did in this case, "[t]he said proof sheets shall be deemed to be the primary evidence of the result of the election and to be prima facie accurate . . ."

(4) Section 3154(e) (1), which provides the procedure to be followed in the recanvassing of a vote where a voting machine is used, further provides:

"If, upon such recanvass, it shall appear that the original canvass of the returns by the election officers was incorrect, the said returns and all papers being prepared by the said board shall be corrected accordingly: (2) Provided, however, That in the case of returns from any election district

wherein the election was held by the use of a voting machine equipped with mechanism for printing paper proof sheets, said proof sheets, if mutually consistent, shall be deemed to be the primary evidence of the result of the election and to be prima facie accurate, and there shall not be considered to be any discrepancy or error in the returns from any such district, such as to require a recanvass of the vote, if all available proof sheets, from the voting machine used therein, identified to the satisfaction of the return board and shown to its satisfaction to have been produced from proper custody, shall be mutually consistent, and, if the general and duplicate returns, or either of them, from said district shall not correspond with said proof sheets, they, and all other papers being prepared by said return board, shall be corrected so as to correspond with the same, in the absence of allegation of specific fraud or error, proved to the satisfaction of the return board by the weight of the evidence, and only in such case shall the vote of said election district be recanvassed under the provisions of this section."

Admittedly, there is here no proof of fraud or misconduct. What is alleged is that the voting machine, through a malfunction, failed to record the actual vote for appellant.

*At the time of the test,* it is obvious that the machine did not accurately register the votes cast for appellant. However, there is no evidence as to when the breakdown occurred. Whether the breakdown occurred at a time it would affect the number of votes cast in Shohola Township is not disclosed by the evidence.

Appellant seeks to overcome the statutory pro-

visions that the vote as returned was accurate by the parol testimony of 70 persons who assert they voted for appellant at the November 4, 1975, election.

We find no appellate court guidance in Pennsylvania, on the question as to whether such evidence is admissible to override the results of an election as shown by the general and duplicate return sheets of the various election districts. Such absence of appellate decisions indicates the general consensus of the bar that the admissibility of such evidence runs counter to the law.

Article VII, Sec. 4, of the Pennsylvania Constitution provides:

"Methods of elections; secrecy in voting.

"All elections by the citizens shall be by ballot or such other method as may be prescribed by law; Provided, That secrecy in voting be preserved."

The only method of permitted voting, other than ballot, is by voting machine. There is not, and constitutionally may not be, any right to vote "viva voce."

In our opinion, to permit a voter to testify how he voted may be equated with granting him or her the privilege of voting "viva voce."

Appellant argues the voters may waive their constitutional rights and cite Taylor and Selby Appeals, 412 Pa. 32, 193 A.2d 181 (1963), Commonwealth v. Gockley, 411 Pa. 437, 192 A.2d 693 (1963), and Wilson v. Philadelphia School Dist., 328, Pa. 225, 195 Atl. 90 (1937), where the Supreme Court said, at page 244:

"No principle has become more firmly established in the field of constitutional law than the fact that a person may effectively by acts or omis-

sion waive a constitutional right to protection of which he would otherwise be entitled, *provided the waiver does not run counter to public policy or public morals.*": (Emphasis supplied.)

Here, such a waiver does run counter to public policy. In rejecting such testimony, the court en banc in Neshaminy School District Eletion Contest, 45 D. & C. 2d 105, 113 (1968), said:

"[S]uch evidence should not be admissible in an election contest as a matter of public policy in any event."

Judge Woodside rejected such testimony in in re Thomas A. Crowley, 57 Dauph. 120 (1945), refused to admit it and said:

"If instead of returning the votes as shown on the ballots we should make return of votes according to oral testimony of the voters we would be making a mockery of the secrecy of the ballot . . ."

As stated above, counsel for Mr. Crellin argue that a person may voluntarily waive a constitutional right and in support of their argument cite Taylor and Selby Appeals, supra; Commonwealth v. Gockley, supra, and Wilson v. Philadelphia, supra, none of which cases involve secrecy of the ballot. Wilson involved a private right to protection of property. Gockley involved the waiver of a fourth amendment right against search and seizure. Taylor dealt with the right of a news reporter to waive his privilege from disclosing his information sources. These constitutional rights were personal to the persons who waived them.

To permit such testimony would allow the witnesses in effect to waive the constitutional right of others to secrecy of the ballot. A person may waive his own right but not another's right.

We believe we would be setting dangerous and unwise precedent to permit a group of voters to testify how they voted when the clear inference to be drawn from the testimony will be that all other voters in the election district voted for a different candidate or candidates.

We do not believe the proof before us warrants a finding that the vote in the Shohola Election District was so permeated with fraud or intimidation or such circumstances we cannot determine, after inspection, the will of the voters. No fraud is here present and under the Election Code, since the voting machine proof sheet agreed with the return sheets, there is primary evidence that the return is accurate. We could find Mr. Coutts elected based upon this primary evidence.

As to appellant's general prayer for relief, we will discuss it later in this opinion.

## APPEAL OF COUTTS

Appellant asserts that the action of the county election board was improper for the following reasons:

(a) That the county board was without authority to recanvass the votes and test the voting machine.

(b) Denial by the county board of appellant's motion not to test the machine because the machine had not been properly impounded.

(c) That the test of the machine showed that Harlan James Crellin could have received only 39 votes, which could not affect the result of the election.

(d) The county board could not authorize the filing of a petition to contest the election after the

close of the normal business hours of the office of the prothonotary.

(e) The county board of elections failed to certify appellant as the winner of the election as required by the Act of June 3, 1937, P. L. 1333, art. XIV, sec. 1407, 25 P.S. §3157. (This reason was not pursued in appellant's brief.)

The relief sought is:

(a) Declare that the county board of elections was without authority to conduct the test and recanvass the vote.

(b) Declare that the recanvass was improperly conducted and is invalid.

(c) Declare that the said voting machine was improperly impounded in the Pike County Jail.

(d) Declare that it is impossible to ascertain that the voting machine was in the same condition on November 24, 1975, as it was at 8 p.m. on November 4, 1975.

(e) Declare that Harlan James Crellin could have received a maximum total of only 39 votes in Shohola township.

(f) Dismiss the petition to contest the general election held on November 4, 1975.

(g) Direct the county election board to make a return indicating that George E. Coutts was elected Commissioner of Pike County.

(h) Declare that George E. Coutts is the duly elected candidate for Commissioner.

*Was the county board of elections without authority to recanvass the vote and test the voting machine?*

Appellant's argument is based upon the provisions of section 1404 of the Election Code, 25 P.S. § 3154 (e) (2), which reads:

"Provided, however, That in the case of returns from any election district wherein the elec-

tion was held by the use of a voting machine equipped with mechanism for printing paper proof sheets, said proof sheets, if mutually consistent, shall be deemed to be the primary evidence of the result of the election and to be prima facie accurate, and there shall not be considered to be any discrepancy or error in the returns from any such district, such as to require a recanvass of the vote, if all available proof sheets, from the voting machine used therein, identified to the satisfaction of the return board and shown to it's satisfaction to have been produced from proper custody, shall be mutually consistent, and, if the general and duplicate returns, or either of them, from said district shall not correspond with said proof sheets, they, and all other papers being prepared by said return board, shall be corrected so as to correspond with the same, in the absence of allegation of specific fraud or error, proved to the satisfaction of the return board by the weight of the evidence, and only in such case shall the vote of said election district be recanvassed under the provisions of this section."

Appellant argues that once the proof sheets taken from the machine were mutually consistent with the return sheets, the election board was without authority to recanvass the vote and test the machine, in the absence of an allegation of specific fraud or error proved to the satisfaction of the return board by the weight of the evidence. It is further contended that there was no such allegations in the recanvass petition or allegations of specific error. While we agree the recanvass petition did not allege fraud, we do not agree that it did not allege specific error. Paragraph 6(a) of the said petition alleges:

"The voting machine used for the casting of

votes in Shohola Township did, due to human error, fail to operate properly."

Paragraph 7 of the petition alleges:

"That, therefore, your Petitioners believe that the voting machine used in Shohola Township, Pike County, Pennsylvania did malfunction and improperly record the number of votes cast for Harlan James Crellin as Commissioner of Pike County, thus failing to record the correct number of votes cast for Harlan James Crellin."

These allegations were supported by evidence when it was determined by actual count that there was present at the hearing 70 persons who would testify that they voted for Mr. Crellin in the Shohola Election District on November 4, 1975. It was stipulated that if sworn to testify, they would testify that they voted for candidate Crellin. Such testimony satisfied the requirement of the statute that specific error be proven by the weight of the evidence taken before the board. Again we say, as was said in our opinion in the motions to quash the petition for election contest, we are not here concerned with the admissibility of such evidence. We are limited here to the single issue as to whether such an allegation was sufficient to authorize the election board to recanvass the vote. We think it did.

There was also before the board the fact that the voting machine registered 297 votes cast for candidate Duffy, while it registered 18 votes for his running mate Crellin. This fact, together with the presence of 70 people who said they would testify that they used the machine to vote for candidate Crellin, was sufficient to support the decision of the Election Board to recanvass the vote. See in re 40th Division, 22nd Ward, 18 Dist. R.

211 (1909), where the court held that where a candidate for magistrate received 51 votes, two candidates on the same ticket received only four and three votes respectively and all other candidates on the same party ticket received 50 votes, error appeared and warranted the opening of the ballot box and a recount of the ballots.

*Was the voting machine in the same condition when tested as it was after the close of the election on November 4, 1975?*

There is no evidence to support a finding that when the voting machine was tested, it was or was not in the same condition as it was at the close of the election. The fact that it was unguarded for about two minutes is inconsequential both because the likelihood that it was tampered with in that period of time is minimal and since the evidence shows that during such unguarded period the machine was in the view of two State Troopers. There is also the testimony of Sheriff Jebson that the machine appeared to him to be in the same condition as when placed in his custody.

We see no factual basis on which to find any change in the condition of the machine from the time the polls were closed to the time it was tested.

*Did the test of the machine show that the maximum number of votes that Mr. Crellin could have received was 39?*

We do not believe that it can factually be determined how many votes Mr. Crellin received based upon the test. To do so would be mere speculation. The evidence shows that the counter on the voting machine did not follow a particular pattern, but was erratic. Under such cir-

cumstances, no mathematical calculation based on the test would have any probative value.

*Was the board of elections without authority to grant leave to petitioners to file a second petition to contest election?*

This is the identical issue raised in the motions to quash the election contest petition. We have stated our ruling on this issue in our opinion on the motions to quash the election contest petition which will be filed contemporaneously with this opinion. In said other opinion, we held the petition timely filed and reference is made to that opinion for our reasons for so doing.

## THE AVAILABLE ALTERNATIVES

In their oral arguments, counsel stated that the court has these alternatives:

(a) Set aside the election results as shown in the returns from the Shohola Election District and declare Harlan James Crellin the winner based upon the parol testimony of 70 voters in the Election District.

(b) Declare George E. Coutts the winner, since the print-out on the voting machine was consistent with the general and duplicate return sheets which is prima facie evidence that the vote in Shohola Township as returned to the county election board is accurate.

(c) Declare a vacancy in the office which would be filled by court appointment.

(d) Order a special election for the single election district of Shohola Township.

(e) Order a countywide special election.

Before considering these alternatives, we express the judgment that to decide this controversy based upon legal technicalities will serve neither

the interests of the two candidates nor the public. Whichever candidate prevailed on that basis would always hold the office under a cloud of uncertainty and doubt, an uncertainty and doubt which might erode public confidence and destroy his effectiveness in office. The winner must be determined by a method which convinces the public that he occupies the office by right and not by the application of some legal technicality.

## ALTERNATIVE (a)

We have already rejected this alternative earlier in this opinion and need not discuss it further.

## ALTERNATIVE (b)

If we accept this alternative, we would declare Coutts the winner based upon the primary evidence accuracy rule, established by the Election Code. There are circumstances, however, which overrule the application of this alternative.

It is undisputed that the voting machine was tested on November 24, 1975, it did not accurately register on the counter the number of test votes cast for Crellin. The erratic manner in which the machine functioned, raises an uncertainty as to how many votes were actually cast for Mr. Crellin on November 4, 1975.

While we are firmly of the opinion that a voter may not testify as to how he voted at an election, the fact that 70 people appeared at the hearing on November 24, 1975, for that purpose, such fact lends a color of strength to Crellin's position that he received more votes in Shohola Township than were credited to him.

Because a doubt exists as to how many votes Crellin received in Shohola Township, we con-

clude it would be unjust to apply the statutory rule of accuracy.

## ALTERNATIVE (c)

If this alternative is adopted, we would declare a vacancy in office and fill the vacancy by appointment.

The adoption of this alternative would be inconsistent with the right of the citizens of Pike County to choose their public officials. We are governed by the will of the majority, ascertained in a free election. To appoint, would mean that a single judge, a nonresident of Pike County, would substitute his will for the will of the people. To arrogate to myself the power of appointment, in my judgment, would be an unwarranted exercise of judicial power, particularly when a better alternative is available.

## ALTERNATIVE (d) and (e)

At the oral argument, counsel for both candidates agreed that under 25 P.S. §3157(b), the court has the authority to order a special election to decide the controversy. 25 P.S. §3157(b) reads, in part:

"(b) The court on appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, *and to make such decree as right and justice may require.*" (Emphasis supplied.)

Neither side abandoned their positions that the court should declare their respective clients the winner, but did agree that the broad language of 25 PS §3157(b) empowered the court under ap-

propriate circumstances to order a special election.

Candidate Crellin's counsel argues that, if the court exercises its authority to decree a special election, such election should pertain only to the Shohola Election District, since it is the only district in which the returns are in dispute. At first blush, this argument appears plausible, but it does not hold up under careful examination because to do so would violate the principle established by Article VII, sec. 6, of the Pennsylvania Constitution, which requires that all laws regulating the holding of elections by the citizens shall be uniform throughout the State. To order an election in Shohola election district only, would mean that the voters in Shohola Township would be privileged to choose between only two candidates, while the rest of the voters in the County were required to choose between four candidates. Thus, the constitutional requirement of uniformity in elections would be violated. In our judgment, to decree that a countywide office should now be decided by a single election district under circumstances where each voter did not cast his vote under equal circumstances would violate the legislative direction that we enter such a decree as justice and right require. To permit the voters of one township to decide this issue by voting in a sharply different manner than all other voters in the county, would not be just or fair.

The argument that we should mandate that the name of all four candidates for the office of county commissioner, should be voted upon at any special election is, to us, legally untenable. First, because candidates Depuy and Duffy are

not parties to this litigation. Such action would be a gross violation of their constitutional right of due process. Secondly, they have been certified by the county election board as having been elected and have been issued certificates of election. These certificates stand unchallenged. In such a situation, the court may not require them to submit to another election. The argument that the county board could not legally certify them as winners is not persuasive. Even if such argument is valid, it is not available to either candidate in this proceeding. The action of the county election board cannot be attacked collaterally. It may only be attacked directly.

It is argued that a countywide election will give Coutts a party registration advantage. Confining the election only to Shohola would give a like advantage to Crellin.

The argument assumes that voters vote according to party registration. Experience shows the contrary. Voters frequently vote for the candidate of the opposite party. This is proven by the close results experienced by both candidates in the November 4, 1975, election. Further, we take judicial notice that in two neighboring counties, the voters did not follow party lines. In Monroe County, where the Democrat Party has the greater number of party registrations, two Republican candidates were elected to the office of county commissioner by substantial pluralities. In Wayne County, where party registration heavily favors Republican candidates, two Democrat commissioners were elected. Voters today vote their convictions without regard to party registration.

Ordinarily, we would be of the opinion that if it cannot be determined which of the two candi-

dates was elected, this would create a vacancy in the office and the court would fill the vacancy and the appointee would serve until the first Monday of January following the next municipal election, a period of two years. Or we could rule that there was a failure to elect anyone to the office, in which case Mr. Coutts, the incumbent would continue in office until the first Monday of January following the next municipal election. However, both sides agree that the court has the equitable power under the Election Code to order a special election. Certainly, there is no specific statutory authority for such action and such action would be unprecedented.

We have a strong conviction that the fairest way to settle this controversy for both the candidates, as well as the public, is by the holding of a prompt election. Since our power to do this is conceded by both sides, we will do so.

We will further order that only those persons who were qualified to vote on November 4, 1975, shall be qualified to vote at the special election. This will maintain the status quo as of November 4, 1975.

We will set the 10th day of February 1976 as the time to hold the special election. An earlier date is prohibited due to the legal requirements of giving public notice of the election.

## ORDER

And now, December 18, 1975, it is ordered:

1. The certification of the county election board certifying George E. Coutts as the apparent winner, dated November 24, 1975, is hereby set aside and it is ordered that a special election shall be held in all election districts of Pike County on the 10th day of

February 1976, between the hours of 7 a.m. and 8 p.m. for the office of county commissioner.

2. That the candidates for said office shall be limited to George E. Coutts, the Republican candidate and Harlan James Crellin, the Democrat candidate.

3. That only persons qualified to vote at the general municipal election held on November 4, 1975, shall be qualified to vote at said special election.