# In re Philadelphia Democratic Mayoralty Primary Election Contest

*Sylvia Meek,* for Charles W. Bowser.
*Gregory Harvey,* for William J. Green.
*Frederick L. Voigt,* for Committee of Seventy.
*William T. Coleman, III,* for David W. Marston.

SCHMIDT, *J.*, August 7, 1979—On May 15, 1979, primary elections were held throughout the Commonwealth of Pennsylvania. Included in the primaries being held in the City of Philadelphia was the Democratic nomination for the office of Mayor. The two principal candidates seeking this nomination were Charles W. Bowser, Esq. and William J. Green, Esq. At 7 p.m. on May 15, this court sat as the Election Court, and until approximately 8:45 p.m. it appeared that it would be a very uneventful evening; however, at 8:45 p.m., in rapid succession, reports began to come in which alleged that voting machines were failing to register votes for both candidate Green and candidate Bowser. Subsequently Gregory Harvey, Esq., candidate Green's representative, informed and demonstrated to the court that an improper printing of the tally sheet for the Jamestown voting machines had created the problem. The court quickly convened a hearing; in attendance were representatives from the District Attorney's Office, the City Solicitor's Office, representatives of candidates Bowser and Green, Fred Voigt, Esq. of the Committee of Seventy and representatives from both the Republican and Democratic City Committees. In addition, this court invited the news media including television cameras to record and publicize the proceedings in order to advise the public what steps were being taken to preserve the integrity of the primary. At this hearing the court issued the following orders:

(1) That all Jamestown machines be impounded; (2) that all Jamestown machines be immediately picked up from their polling locations and delivered to the warehouses located at 4700 Wissahickon Avenue and 5400 North Sixth Street; (3) that the keys to all of the Jamestown machines

be immediately impounded and delivered into the custody of the court by the morning of May 16, 1979, and that the court would retain custody of these keys until a canvass of the Jamestown machines was completed.

In addition, the court advised all parties that the candidates and their representatives could be present during the actual canvass of the Jamestown machines. On the following day, May 16, the court met at the 4700 Wissahickon Avenue warehouse with several of the candidates and their representatives. Only one machine was canvassed on May 16. On this same date, it was agreed that a civilian monitoring group of candidate Bowser's representative's choosing would be permitted to remain in the warehouses overnight along with the police guard in order to insure that there would be no overnight tampering with the voting machines. This monitoring group was permitted to continue its activities throughout the canvass of the Jamestown machines and later during the inspection of the Shoup machines. On May 17, it became apparent to all concerned that if the approximately 950 Jamestown machines were to be canvassed quickly and accurately additional help would be needed. John Street, Esq., candidate for councilman of the Fifth Councilmanic District, suggested that the judges of the Court of Common Pleas be used to canvass the machines. After consultation with President Judge Edward J. Bradley, this court was informed that this was not possible. It was then suggested by a representative from candidate Green's staff that an accounting firm be retained to canvass the Jamestown machines. This suggestion was acceptable to all parties who later submitted a list of accounting firms to this court. From this list

the firm of Coopers and Lybrand was selected to perform the canvass of the Jamestown machines; they sent their first teams of auditors on Saturday, May 19; the court continued to permit the candidates and their representatives to be present during the canvass and to inspect the voting machines during and after the canvass. This court also continued its policy, which began with the hearing held on the night of May 15, of informing the news media of the proceedings. It was this court's belief that only by allowing and encouraging a wide and open dissemination of all of the proceedings surrounding the primary could the public faith in the electoral process be maintained and/or restored.

Pursuant to a petition filed May 22, 1979, by Sylvia Meek, Esq. on behalf of candidate Charles W. Bowser, Esq., et al. to waive fee and to impound, open and recount all the Shoup machines, and a like petition filed by William T. Coleman, III, Esq. on behalf of David W. Marston, Esq. on May 23, 1979, the court, in cooperation with the Acting County Board of Elections, the Honorable Marvin R. Halbert, the Honorable Lawrence Prattis and the Honorable Paul Silverstein, scheduled a conference on May 24, 1979, with all the interested parties and proposed an inspection of the Shoup machines under the court and Acting County Board of Elections supervision; all parties agreed. The inspection of these machines was carried out by teams of inspectors which were composed of one representative of each opposing candidate and an employe of the County Board of Elections. These inspection teams were permitted to inspect the machines and to record the vote for their respective candidate and the opposing candidate. It should be noted that the inspection of the Shoup machines

was permitted despite the fact that no evidence had been presented to show that there were any improprieties concerning these machines. After the canvass of the Jamestown machines and the inspection of the Shoup machines, the combined total of which was approximately 4,000 machines, the court dismissed with prejudice these petitions of Sylvia Meek, Esq. and William T. Coleman, III, Esq. by and with the agreement of the attorneys for petitioners; it was agreed the issue was moot.

On June 4, 1979, 20 days after the primary contest held on May 15, 1979, a petition for election contest was filed with the Prothonotary of the Court of Common Pleas of Philadelphia on behalf of five petitioners represented by Sylvia Meek, Esq., who also represented mayoralty candidate, Charles W. Bowser. The petition sought to have the Democratic mayoralty race between William J. Green, Esq., and Charles W. Bowser, Esq. "set aside" and a special election held.

Notwithstanding the fact that the petition stated that it was filed pursuant to 25 P.S. §§3431 and 3456 of the Pennsylvania Election Code of June 3, 1937, P.L. 1333, the petition failed to contain 20 signatures of 20 electors as required by section 3431 but in fact was signed by only five petitioners.

On the afternoon of June 4, 1979, which was the last day for filing said petition, counsel for petitioners, having filed the defective petition with the prothonotary's office, presented a copy of the petition to the court. The court upon its examination of the petition recognized that the petition failed to comply with section 3431 of the Pennsylvania Election Code.

On June 6, 1979, at the request of counsel for petitioners, a conference was held in the court's

chambers attended by counsel for petitioners, Sylvia Meek, Esq., counsel for respondent candidate William J. Green, Gregory Harvey, Esq., and the Acting County Board of Elections. Counsel for petitioners informed the court that though the petition did not conform to section 3431, it was her intention, with leave of the court, to file an amended petition. Counsel for petitioners also suggested that because she had been misinformed by the prothonotary's office of the requirements of a contest petition, the court should grant her leave to file an amended petition despite the fact that the twentieth day as prescribed by section 3456 had already expired. The court then advised both parties that it would hold the matter under advisement pending a hearing to be held on June 11, 1979, in courtroom 453. In response to the petition for election contest, three answers were filed. On June 7, 1979, Frederick L. Voigt, Esq. of the Committee of Seventy filed a petition for leave to file brief and appear as amicus curiae. On this same date, Assistant City Solicitor Samuel Moonblatt, Esq., on behalf of the Acting Board of Elections, filed a motion to quash petition for election contest. On June 11, 1979, respondent Green, through his attorneys, filed objections of respondent William J. Green to petition for election contest. Although the three answers were filed independently, each made the same objections (1) that the petition was jurisdictionally defective because of its failure to bear the signatures of 20 electors as required by section 3431, and (2) the petition failed to allege sufficient facts to state a cause of action to warrant the setting aside of the Democratic Mayoralty Primary held on May 15, 1979, and the ordering of a new election with regards to that contest.

On June 8, 1979, the court, over the objections of

counsel for petitioners, entered an order granting the Committee of Seventy's petition, permitting the Committee of Seventy to participate in the proceedings as amicus curiae. On this same date, the court entered an order requiring the petitioners seeking a new election to post a bond by June 11, 1979, in the amount of $10,000 in accordance with section 3459 of the Pennsylvania Election Code or suffer a dismissal of their action. A motion for leave to amend petition for election contest was filed on June 8, 1979, by counsel for petitioners. The amended petition was virtually identical to the original petition except that the amended petition omitted paragraph (65) of the original petition which the petitioners had included by mistake and the amended petition attempted to comply with section 3431 by supplying the signatures of 20 electors as petitioners. On June 11, 1979, a hearing was held in courtroom 453 at which time the court heard argument on the motion for leave to amend petition for election contest and the petition for election contest. At the conclusion of argument the court dismissed the original petition due to its failure to comply with section 3431 of the Pennsylvania Election Code. The amended petition was dismissed on the basis that the court lacked authority to permit an amendment which went to an expressed jurisdictional requirement. In addition, both petitions were dismissed on the basis that they failed to set forth a cause of action.

Question I: *Can A Petition For Election Contest Be Amended To Comply With The Jurisdictional Requirements As Set Forth In Section 3431 Of The Pennsylvania Election Code After The Expiration Of The Twentieth Day As Set Forth In Section 3456 Of The Pennsylvania Election Code?*

Answer: No.

Section 3291 of the Pennsylvania Election Code states: "The several classes of nominations at primaries and elections of public officers which may be contested in this Commonwealth are hereby distinguished and designated as follows, to wit:

"Class I. Nominations and elections of the Governor and Lieutenant Governor of the Commonwealth.

"Class II. Nominations and elections of electors of President and Vice-President of the United States and all officers of this Commonwealth, including Judges of the Supreme and Superior Courts (except Governor and Lieutenant Governor), who now are or hereafter shall be required to be nominated or elected by the electors of the State at large, and nominations of United States Senators.

"Class III. Nominations and elections of judges of the several courts of records, to be learned in the law, other than Judges of the Supreme and Superior Courts.

"Class IV. Nominations and elections of Senators and Representatives in the General Assembly, and nominations of Representatives in Congress.

"Class V. All other officers, whether nominated or elected by the qualified voters of counties, cities, boroughs, townships, wards, school districts, poor district or any other division of the State." All of the parties concerned agreed that the present contest was a Class V action.

Section 3431 of the Pennsylvania Election Code entitled "Jurisdiction" states: "Cases of the fifth class shall be tried and determined upon petition of twenty registered electors, as hereinafter provided

by the court of common pleas of the county in which such contested election was held."

Section 3456 entitled "Petition, time of filing amendment" states:

"The commencement of proceedings in the case of contests of second, third, fourth and fifth classes shall be by petition, which shall be made and filed, as hereinafter required, within twenty days after the day of the primary or election, as the case may be. The petition shall concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal, and after filing may be amended with leave of court, so as to include additional specifications of complaint. After any such amendment, a reasonable time shall be given to the other party to answer."

Although section 3456 of the Pennsylvania Election Code permits a party to amend a petition to aver "additional specifications of complaint," it does not permit amendments to meet expressed jurisdictional requirements. Counsel for petitioners has cited Snodgrass's Case, 267 Pa. 494, 110 Atl. 293 (1920), as support for her contention that even after the twentieth day as prescribed by section 3456 an amendment can be allowed to meet a jurisdictional requirement. Counsel's reliance upon Snodgrass is misplaced. First, the Supreme Court in Snodgrass's Case, supra, stated at page 497: "Therefore, all matters which merely concern exactness or particularity in the petition, *as distinguished from the omission of facts expressly required to be originally pleaded* therein, may, on cause shown, be amended, even after the time limit for initiating the proceedings has expired." (Emphasis supplied.)

Thus it appears that although the Supreme Court recognized the right of the lower courts to permit amendments after the expiration of the time limit, such amendments were limited to those matters which were not "expressly" required to be pleaded. The court then held in Snodgrass that the lower court had not abused its discretion in allowing the challenged amendments as they did not concern matters which were expressly required to be pleaded. Since section 3431 of the Pennsylvania Election Code specifically states that: "Cases of the fifth class shall be tried and determined upon petition of twenty registered electors," an amendment pertaining to this requirement could not be allowed after the expiration of the 20-day limit as set forth in section 3456.

In a more recent decision concerning sections 3431 and 3456 of the Pennsylvania Election Code: Bayuk v. Bucks Co. Bd. of Election, 5 D. & C. 3d 328 (1977); it was again held that there could be no amendment of matters required to be pleaded upon the expiration of the 20-day time limit. In Bayuk the election contest petition was signed by only six petitioners and the 20 days in which petitioners had to file a contest action had expired before the petition could be amended. The court in Bayuk placed great reliance upon the Supreme Court's decision in Dunmore Borough's Election, 264 Pa. 231, 107 Atl. 725 (1919), and held that after the expiration of the twentieth day as set forth in section 3456 a court cannot permit amendments to meet jurisdictional requirements. This court itself has searched to find case law which would have permitted it to allow an amendment such as the one in question after the expiration of the time limit; however, the court was unable to find any such case.

Mrs. Meek, petitioners' attorney, has also claimed that her failure to file a proper and timely contest petition was due in part to misinformation supplied by the prothonotary's office. According to Mrs. Meek, she was informed by the prothonotary that a Class V contest petition required the signatures of only five petitioners; therefore, in reliance upon this information, she filed her petition with the signatures of only five petitioners. Accepting all that counsel claims as true, this court concludes that an extension of the 20-day time limit as prescribed by section 3456 is unwarranted. This court has previously cited section 3431 in its entirety and notes that the section sets forth in very concise terms the jurisdictional requirements of a Class V contest. It is clear upon reading section 3431 that 20 signatures of 20 petitioners are required to meet the jurisdictional mandates of a Class V contest. Counsel for petitioners cannot be permitted to rely on misinformation from the prothonotary's office when a reading of the statute would have supplied counsel with the correct information. If counsel had relied upon misinformation from the prothonotary's office which concerned matters which were exclusively within the knowledge of the prothonotary, or matters concerning administrative procedures not mandated by statute, counsel's claim would have had more merit. Under the present factual situation, where there is a statute which does set forth in clear and concise terms the requirements for proceeding, counsel's reliance upon misinformation from the prothonotary cannot justify her failure to file a proper petition.

It is unfortunate that counsel for petitioners did not file a petition sooner than the last day permitted by section 3456 of the Pennsylvania Election Code.

It is also unfortunate that the petition which was filed on the twentieth and last day was defective; however, these are circumstances which the court does not have the discretion to remedy. There are very strong and compelling reasons why the legislature has not given the courts this discretionary power. Justice Nix in writing for the Supreme Court in the matter of In Re Petition Of Jones, 464 Pa. 152, 156, 346 A. 2d 260 (1975), has perhaps best stated these reasons at page 262:

"The Pennsylvania Election Code, Act of June 3, 1937 P.L. 1333, art. I §101 et seq., as amended, 25 P.S. §2601 et seq., reflects a clear intention of the Legislature to expeditiously dispose of objections and to provide for prompt certification of the vote. The integrity of the election process requires immediate resolution of disputes that prevent certification. This is particularly true in Primary Elections where the results must be finalized in sufficient time to enable the election machinery to be readied for the General Election. Recognizing these considerations, this Court has held that compliance with statutorily imposed time limits is especially important in this area."

The court holds that the petition for election contest failed to comply with section 3431 of the Pennsylvania Election Code and that the court does not have the power to permit an amendment which would establish jurisdictional requirements after the expiration of the 20-day time limit as set forth in section 3456 of the Pennsylvania Election Code.

Question II: *Did The Petition For Election Contest Set Forth A Cause Of Action?*

Answer: No.

One of the requirements of section 3456 of the Pennsylvania Election Code is: ". . . The petition shall concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal, and after filing may be amended with leave of court, so as to include additional specifications of complaint. . . ."

The setting aside of any election is a matter of grave concern and such a remedy should be granted only as a last resort. Those who seek such an extraordinary remedy must plead sufficient facts to enable a court to conclude that an error or fraud of such gravity and magnitude has been committed which makes it impossible for the court to ascertain the true will of the electorate. The Supreme Court of Pennsylvania stated in Winograd v. Coombs, 342 Pa. 268, 20 A. 2d 315 (1941), at 271-272:

"It is only when an election has been characterized by such fraud or intimidation or other unlawful conduct as to make the election a mere travesty or when the ballots or voting machines (as the case may be) are in such condition that it is impossible to ascertain from an inspection of them the will of the voters that a court will reject the entire returns from a district and annul the election."

The courts must always be cognizant of the fact that those among us who have properly voted have a right to expect that vote to be counted. It is not enough for a petitioner in a contested election to aver facts which if proven might cause a change in the reported results; but rather a petitioner must aver facts that if proven would definitely change

the results. An election contest petition which seeks a new election cannot be a vehicle for a defeated candidate to make investigations hoping that somewhere enough votes will be discovered to give him or her the victory sought.

Chief Justice Michael J. Eagen, in writing for the Supreme Court in Madigan Appeal, 434 Pa. 361, 253 A. 2d 271 (1969), stated at page 365 the holding of the lower court in Weaver v. Given, 6 Phila. 65, which was: " ' "The court will not grope in the dark, or follow a contestant on a fishing expedition, in the hope of being able to find enough to enable him by the investigation to make out his case." ' "

There can be no doubt that the paramount concern of a court when faced with a contested election is to ascertain the true will and desire of the electorate; but the court cannot allow a shadow to be cast upon the will of the electorate on the basis of mere speculation.

The petition for election contest in the present case is composed of 75 paragraphs; however, many of the paragraphs can be grouped together and shown to be suffering from a common deficiency. Paragraphs (3), (16), (30), (46) and (68) all aver that fraud or error was possible but fail to aver that it did in fact occur. Illustrative of this point is paragraph (3) which states: "The action taken by the County Board of Elections and Registration Commission and employees under their control aided and abetted an outmoded election process which makes possible widespread abuse, illegality, fraud, negligence, irregularity, and human error."

Even should the court accept everything which this paragraph avers as being true, there is no allegation that illegality, fraud, negligence, irregu-

larity and/or human error did in fact occur. The possibility of error and fraud being committed during the course of an election exists in every election and so long as humans are responsible for conducting elections, error and fraud will be inescapable possibilities no matter what procedure is devised. A court must require more than mere allegations that error or fraud was possible; but rather, it must require a petitioner to plead that error or fraud did in fact occur. Again, it must be emphasized that a contest cannot be used as a means for a defeated candidate to make an investigation hoping to find a discrepancy which will give him or her a victory: Madigan Appeal, supra.

Perhaps the most widespread and glaring defect throughout this petition for new election is the fact that it calls upon the court to make very broad assumptions which are not supported by any facts in the pleadings. Paragraphs (28), (31), (33), (42), (46), (50), (58) and (59-69) best demonstrate this weakness.

Paragraph (28) states: "Petitioners allege that voting machines which were non operative for whatever reason caused the loss of a sufficient number of votes for mayoralty candidate Charles W. Bowser which materially affected the outcome of the election." Paragraph (28) requires the court to assume that when a voting machine malfunctioned it adversely affected candidate Bowser only and that candidate Bowser would have been the recipient of all votes which were lost due to machine failure. The petitioners ask the court to act upon a broad assumption despite their failure to plead facts in support of that assumption. The petitioners throughout their petition fail to name any

individuals or specify any number of persons who claimed to have been adversely affected by the actions complained of in paragraph (28).

Paragraph (31) states: "Petitioners allege that the late changes in the polling locations caused the loss of substantial number of votes for candidate Charles W. Bowser." This paragraph calls upon the court to make two assumptions. First, this court must conclude that votes were lost due to a late change in polling places and, second, the court must conclude that all votes lost would have gone to candidate Bowser. As with paragraph (28), the petitioners have failed to support their allegations in paragraph (31) with any factual averments. Further discussion of paragraph (31) would serve only to reiterate the court's views as discussed in its analysis of paragraph (28).

Paragraphs (59-69) allege that illegal assistance was rendered to different voters in the voting booth; each paragraph named a different location; there is however no mention for whom the vote was cast. The petitioners apparently believe the court should conclude that if an illegal vote was cast it was cast for candidate Green, notwithstanding their failure to plead any facts which would permit the court to draw this conclusion. Although each of the complaints in the above cited paragraphs may differ in its substance, there is a common denominator and that is that each requires the court to draw broad assumptions. It should be stated that the court has chosen to discuss the above paragraphs because it believes that they best exemplify the petitioners' failure to state a cause of action, and that the paragraphs chosen best demonstrate the deficiencies which the court found throughout the petition for election contest.

Although this court believes that the above dis-

cussion sufficiently points out the petitioners' failure to state a cause of action, nevertheless the court feels constrained to make an additional observation. In paragraph (3) petitioners complain of an "outmoded election process"; this allegation raises a serious question. What would the petitioners have had the Acting County Board of Elections do in order to have assured a proper election? Is the suggestion that entirely new personnel should have been hired because there is complaint about the present personnel? Is the suggestion that all new machines should have been obtained? Should the Acting County Board of Elections have constructed an entirely new system for this past primary?

Query: If this court were to have ordered a new election, how would the court have conducted it? If there are complaints about the present system, are the petitioners suggesting that this court would be called upon to hire entirely new personnel to conduct this election and new machines? Or just what should the system be?

The court suggests that the Acting County Board of Elections was acting properly when it retained and used the present personnel and the present machinery, and that the attempts to repair the voting machines and to get additional machines were proper exercises of its discretion. The Acting County Board of Elections had little alternative; in fact they had practically none. It also appears to the court that the petitioners, aside from requiring the court to take upon itself a task which no court is capable of carrying out, would have the court substitute its will for that of the legislature. If there is a need for reform in the electoral process, it must come from the legislature and not from the court acting upon an election contest petition.

To conclude, this court dismissed the petition for

election contest because it failed to contain the signatures of 20 electors as required by section 3431 of the Pennsylvania Election Code and the amended petition for election contest was dismissed because the court lacked authority to permit correction of an expressed jurisdictional requirement after the expiration of the twentieth day as prescribed by section 3456 of the Pennsylvania Election Code.

Finally, even had the petition for election contest and the amended petition for election contest not suffered from the above stated defects both petitions would have been dismissed due to their failure to state a cause of action.