505 A.2d 634

In Re: Primary Election Canton Township, Supervisor, Donald R. White; Auditor, Donna J. Sarnicke; Constable, Frank N. Petronka; District Justice, Marjorie Lee Teagarden; School Director, John B. Stavovy, Jr., Democratic Nomination.
C. E. Kurowski, Appellant.

Argued October 11, 1985, before Judges CRAIG and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*C. E. Kurowski,* with him, *Steven R. Wolf,* for appellant.

*Patrick C. Derrico,* with him, *J. Lynn DeHaven* and *Melvin B. Bassi,* for appellee.

OPINION BY JUDGE BARRY, February 6, 1986:

Several electors from Canton Township (appellants) have brought this appeal from an order of the Court of Common Pleas of Washington County dismissing their petition contesting the municipal primary election held in Canton Township on May 21, 1985, for the offices of supervisor, auditor, constable, district justice and school director.

The trial court made the following factual findings:

1. At the Municipal Primary Election on May 21, 1985, the following township offices and a substantial portion of Magisterial District 27-3-09 and the democratic candidates therefore, together with the actual votes received, were as follows:

(a)  Supervisor (6 years)
   Donald R. White—(533)
   William H. Warrick—(752)
   William D. Bonus—(434)
(b)  Auditor
   Donna J. Sarnicke—(859)
   Malcolm V. Hay—(617)
(c)  Constable
   John M. Jochynek—(547)
   Paul W. Boardley—(392)
   Lloyd W. Raneger—(40)
   Frank N. Petronka—(707)
   Lillian Myers—(57)
(d)  District Justice
   Charles E. Kurowski—(738)
   · Ben D. Henry—(59)
   Joseph Oliverio—(400)
   Marjorie Lee Teagarden—(919)
(e)  School Director (4 years)
   Stanley A. Warco—(1232)
School Directors (2 years)
   John B. Stavovy, Jr.—(881)
   Russell L. Gorby—(665)

Magisterial District 27-3-09 also includes Hopewell Township, West Middletown Borough and Independence Township and the votes listed include these areas. The vote totals for the magistrate candidates in Canton Township only, were as follows: Kurowski—(615); Henry—(56); Oliverio—(314); and Teagarden—(778).

2.  On election day, xerox or photostatic copies of parts of absentee ballot instruction pages containing the names and offices as above stated were widely disseminated at all five (5) precinct polling places in Canton Township. A copy of Petitioner's Exhibit "A"[1] which illus-

---

[1] Petitioner's Exhibit "A" is as follows:

## FOOTNOTES

[1]Petitioner's Exhibit "A" is as follows:

LOCAL CANDIDATES 19?

| CANTON | Official Democratic Ballot | |
|---|---|---|
| SUPERVISOR (6 years) (Vote For Not More Than One) | DONALD R. WHITE | 58 |
| | WILLIAM H. WEIRICH | 59 |
| | WILLIAM D. BONUS | 60 |

*Good*

*Don White Supervisor*

| AUDITOR (6 years) (Vote For Not More Than One) | DONNA J. SARNICKE | 67 |
|---|---|---|
| | MALCOLM V. HAY | 68 |

*Good*

| CONSTABLE (6 years) (Vote For Not More Than One) | JOHN M. JOCHYNEK | 70 |
|---|---|---|
| | PAUL W. BOARDLEY | 71 |
| | LLOYD W. RANEGAR | 72 |
| Good-Choice ✓ | FRANK N. PETRONKA | 73 |
| | LILLIAN MYERS | 74 |

| CANTON | Official Democratic Ballot | |
|---|---|---|
| DISTRICT JUSTICE (6 years) MAGISTERIAL DISTRICT 27-3-09 | CHARLES E. KUROWSKI | 210 |
| | BEN D. HENRY | 211 |
| (Vote For Not More Than One) | JOSEPH OLIVERIO | 212 |
| Good-Choice ✓ | MARJORIE LEE TEAGARDEN | 213 |

| Official Democratic Ballot | | |
|---|---|---|
| SCHOOL DIRECTOR (4 years) TRINITY AREA SCHOOL DISTRICT Region II (Vote For Not More Than One) | STANLEY A. WARCO | 191 |
| SCHOOL DIRECTOR (2 years) TRINITY AREA SCHOOL DISTRICT (Region II) (Vote For Not More Than One) | JOHN B. STAVOVY, JR. | 193 |
| | RUSSELL L. GORBY | 194 |

*Good Choice*

Exhibit "A" 8A

trates better than words how the document appeared, is attached to this Order.

3. Eugene Foster, an incumbent Township Supervisor and unopposed Republican candidate for re-election, pieced together and copied the document which was distributed.

4. The document was composed of parts of pages from the instruction booklet for absentee voters. The booklet itself was obtained from a local elector who had voted absentee.

5. Washington County has an approved electronic voting system pursuant to *25 P.S.* §*3031.1, et seq.* The procedure in regard to absentee voting is that, after appropriate application, the absentee voter is sent a punchcard ballot, instruction booklet which contains the names and offices to be voted upon . . . and the appropriate return envelopes. After punching the ballot card, the elector returns only the punchcard itself, the other materials remain with the elector.

6. The document does not contain who prepared or paid for the same, although it was apparently well known that Mr. Foster and his political workers and supporters were distributing the materials at the polls.

7. Disparaging personal remarks were made prior to and on election day regarding candidate Warrick and candidate Boardley.

8. The Incumbent District Justice and candidate for re-election, Marjorie Lee Teagarden, received a donation to her campaign from Falconi Toyota Motors, Inc. as evidenced by the campaign election expense report filed by the candidate on June 18, 1985. The candidate, thereafter, after the beginning of the within

proceedings, filed an amended report indicating that the contribution had been returned.

9. Candidate Teagarden, although aware of Mr. Foster's support and also aware that Exhibit "A" was being widely distributed on election day took no part in the campaigns of other persons, nor did she campaign for or on behalf of anyone other than herself.

10. Mr. Foster on election day aided two (2) blind voters, Mr. and Mrs. Henry Porter, to vote. The appropriate form was either not filled out or not returned in the ballot box following the election. Mr. Porter appeared and testified and indicated that Mr. Foster indeed did aid him to vote and that Mr. Foster did so at his specific request.

The trial court then concluded that although these facts indicate that certain provisions of the Pennsylvania Election Code[2] may have been violated, the activities in question are not sufficient to cast doubt upon the outcome of the election. The petition was, therefore, denied and this appeal followed.

Appellants argue that the trial court erred "in failing to fashion a remedy which would purge the illegal and unlawful conduct. . . ." (Appellant's brief page 10). More specifically, they refer to the document labeled by the trial court as Exhibit "A" (see footnote 1). They maintain that this document was illegal because it did not identify either its author or its financial sponsor as required by Section 1638 (a)(1) and (2) of the Election Code. Appellants then conclude that the widespread distribution of this unlawful and misleading document is tantamount to the type of fraud required to overturn the election. We must disagree.

---

[2] Act of June 3, 1937, P.L. 1333, 25 P.S. §2000-3591.

It is certainly true that where fraud is involved it is the court's duty to purge the unlawful conduct. However, it is also the court's responsibility to insure that the will of the people is not tampered with unless there is "proof of fraud or other unlawful practices of such magnitude and so interwoven with the casting and counting of the votes as to obviously deprive the election returns of all validity." *Winograd v. Coombs*, 342 Pa. 268, 271, 20 A.2d 315, 316 (1941). The illegalities alleged in the case at hand certainly do not rise to this level. Appellants' basic contentions are that the document was illegal because it did not meet the specifications set forth in the Election Code and it was misleading because it led many people into believing that the candidates named were officially endorsed by the Democratic party. The trial court specifically stated that it found no merit in this second contention. This factual determination is supported by the record and we are, therefore, bound by it. With respect to the possible violation of the Election Code we are in complete agreement with the trial court that such a violation could not support an annulment of the election. Discussing a similar type of violation in *Winograd,* the Supreme Court has stated:

> Irregularities on the part of election officers may be such as to warrant criminal proceedings against them and yet not affect the integrity of the returns. It is only when an election has been characterized by such fraud or intimidation or other unlawful conduct as to make the election a mere travesty or when the ballots or voting machines (as the case may be) are in such condition that it is impossible to ascertain from an inspection of them the will of the voters that a court will reject the entire returns from a district and annul the election.

342 Pa. at 371-372, 20 A.2d at 316.

Appellants next suggest that, in the alternative, we separate the "legal" votes from the "illegal" ones by "factoring out"[3] all ballots which followed the anonymous endorsement. They essentially maintain that this is a less drastic and more direct way to purge the effects of the illegal document. For the same reasons discussed above, we find that this remedy is inappropriate. Chief Justice MAXEY stated in *Appeal of Gallagher,* 351 Pa. 451, 454-455, 41 A.2d 630, 632 (1945):

> The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons. (Citations omitted.) . . . There should be the same reluctance to throw out a single ballot as there is to throw out an entire district poll, for sometimes an election hinges on one vote.

Lastly, we note that our decision not to interfere with the election returns is not to be taken as approval of the conduct in question. We believe the proper way to punish and discourage improper behavior is to pursue the criminal sanctions provided in the Election Code.

Affirmed.

### ORDER

Now, February 6, 1986, the order of the Court of Common Pleas of Washington County, dated August 13, 1985, at No. 71 June Term 1985, A.D., is hereby affirmed.

---

[3] Appellants define this proposition to mean removing from the tally those votes which followed the slate set forth in footnote 1.